STATE LODGE OF MICHIGAN, FRATERNAL ORDER OF POLICE, v. CITY OF DETROIT.

1. MUNICIPAL CORPORATIONS—FRATERNAL ORDER IN LAW-ENFORCING BODY—ASSOCIATE MEMBERS—PUBLIC POLICY.
    Existence within municipality's law-enforcement body of a fraternal order which permitted citizens to become associate members for a fee and furnished them a membership card and car emblem is contrary to public policy.

2. SAME—POLICEMEN—INSUBORDINATION.
    In proceeding by fraternal order and two of its members to have declared null and void an order of the police commissioner forbidding city policemen from becoming members of a fraternal order which permitted citizens to become associate members for a fee, evidence showed that the two individual members who had joined such organization were guilty of insubordination.

3. SAME—POLICE AND FIRE DEPARTMENTS—UNDIVIDED ALLEGIANCE.
    Since police and fire departments are at times charged with the preservation of public order their members owe to the public their undivided allegiance and the right of the employing mu-

nicipality to their complete control is imperatively necessary in order to maintain discipline.

4. SAME—DISCRETION OF CITY POLICE COMMISSIONER.

A city police commissioner is necessarily vested with a large measure of discretion and the burden of showing arbitrary action on his part is upon those who charge it.

5. SAME—CITY POLICE COMMISSIONER—ORDER FORBIDDING MEMBERSHIP IN CERTAIN ORGANIZATION—AUTHORITY.

Order of city police commissioner forbidding city policemen from joining fraternal order which permitted citizens to become associate members and furnished them a membership card and a car emblem was within the scope of authority granted by city charter, was not arbitrary or unreasonable and did not deprive the order or the city's policemen of any constitutional right.

6. COSTS—PUBLIC QUESTION—VALIDITY OF POLICE COMMISSIONER'S ORDER.

No costs are allowed in suit to determine validity of order of city police commissioner forbidding city's policemen from becoming members of fraternal order which permitted citizens to buy associate memberships and who were given membership cards and car emblems evidencing such relation.

Appeal from Wayne; Ferguson (Frank B.), J. Submitted January 14, 1947. (Docket No. 55, Calendar No. 43,509.) Decided May 16, 1947. Rehearing denied June 27, 1947. Certiorari denied by Supreme Court of the United States November 10, 1947.

Bill by State Lodge of Michigan, Fraternal Order of Police, a Michigan nonprofit corporation, and others against the City of Detroit and others to have an order of the police commissioner declared null and void, for an injunction and to have orders of suspension set aside. Decree for defendants. Plaintiffs appeal. Affirmed.

*Edward N. Barnard,* for plaintiffs.

*William E. Dowling,* Corporation Counsel, and *Nathaniel H. Goldstick,* Assistant Corporation Counsel, for defendants.

Reid, J. By their bill of complaint plaintiffs sought to have declared null and void an order of the police commissioner of the city of Detroit dated June 5, 1919, forbidding Detroit police officers to become members of the Fraternal Order of Police, and also sought an injunction restraining defendants from carrying into effect such order or any order of similar purport; plaintiffs further sought to have declared void an order in February, 1943, discharging plaintiffs Heine and Duggan as police officers of the city of Detroit. Plaintiffs appeal from a decree of the circuit court for the county of Wayne dismissing their bill.

Involved in this case is the reasonableness of the order of the police commissioner of the city of Detroit, prohibiting the members of the Detroit police force from becoming members of a local organization of the State Lodge of Michigan, Fraternal Order of Police, and whether the order prohibiting such membership violated the constitutional rights of assembly, guarantee of equal privileges and immunities, and of equal protection of the laws.

Defendants claim that the questions involved are whether the rule of June 5, 1919, prohibiting membership in the Fraternal Order of Police was a valid exercise of authority by the police commissioner in view of the constitution and bylaws of the national, State and local lodges, and has the police commissioner authority to pass such prohibitory rule based upon the history, past conduct and leadership of the plaintiff Fraternal Order of Police, and whether the action of the police commissioner was a reasonable exercise of authority when we consider sale of associate memberships and car emblems as matters contrary to public policy. Defendants further contend that the two plaintiff police officers had a fair hearing before the trial board, at which hearing they were found guilty of insubor-

dination, and that the court ought not to set aside the order of dismissal where there is competent evidence to sustain the findings of the trial board.

On June 5, 1919, James Inches, then commissioner of police of the city of Detroit, issued an order forbidding police officers of his department to become members of plaintiff Fraternal Order of Police. Defendant John H. Witherspoon was commissioner of police of the city of Detroit from June 1, 1942 until his resignation, January 1, 1944, and while he was commissioner and before January 1, 1943, had occasion to investigate the Fraternal Order of Police and its activities. He examined the file of his office respecting the plaintiff order and discussed the file with officers in the city of Detroit police department and with police officers in other police departments.

On Thursday, January 28, 1943, a group of Detroit police officers, including two plaintiffs, patrolman Howard Heine and detective Bernard L. Duggan, attended a dinner meeting in Detroit, at which there were also present a number of police officers, including representatives of the Hamtramck lodge of Fraternal Order of Police, Henry Mida of the Dearborn police department, and president of the State Lodge, Fraternal Order of Police, and also a reporter from the Detroit Free Press. A temporary organization was set up with Heine as temporary president and Duggan as temporary secretary. This meeting was without the knowledge of defendant Witherspoon. An account of the meeting was published in the Detroit Free Press the evening of January 29, 1943. The next morning plaintiff Heine was summoned to police headquarters to a meeting with defendants Witherspoon and Berg, the latter being superintendent of police of the city of Detroit. A transcript of the stenographic minutes of the meeting appears in the record. At that meeting

Heine related the circumstances of the Thursday meeting, denied that he knew of the existence of commissioner Inches' order prohibiting membership in the Fraternal Order of Police; stated that he had been advised that membership in the organization was contrary to the orders of the police department but that he had allowed himself to be elected president. Plaintiff Heine was then given a copy of Inches' order, whereupon he said that if the Fraternal Order of Police was permitted to organize in the police department he would join it but if not, he would not join, and that he would pull out of the organization, and also stated that no new meeting was contemplated and that the organization intended to present the matter to the commissioner for permission to organize. Upon leaving this meeting, plaintiff Heine went directly to the Eagles Hall in Detroit, where a secret organization, initiation and election meeting was held. Heine was elected permanent president and plaintiff Duggan, secretary. On February 1, 1943, Duggan was summoned to police headquarters before defendant Witherspoon. A transcript of the stenographic minutes taken at that meeting appears in the record. Duggan refused to reveal any information relative to the meeting held on January 28, 1943, on the ground that this meeting was a secret meeting. He said he knew of the rule prohibiting membership in the Fraternal Order of Police but he joined nevertheless because he figured the rule was wrong and he was willing to be the "guinea pig" in a test case. He admitted being on duty from 8 to 4 of a day when he attended a meeting of the Fraternal Order of Police at 3 o'clock, without having first obtained permission to leave his work prior to the end of his shift.

On February 2, 1943, charges of misconduct were preferred against Heine, charging disobedience of rules and orders of the department, reporting falsely to a superior officer and insubordination. On the same day similar charges were preferred against Duggan, with the additional charge of being absent without leave. Both officers were ordered to appear before the police trial board on February 5, 1943, to answer the charges. The transcripts of the trials before the police trial board are in the office of the clerk of this Court. Neither plaintiff Heine nor plaintiff Duggan took the stand to offer any testimony in their own defense and neither of them offered to withdraw from the Fraternal Order of Police. At the trial of plaintiff Heine, which occurred February 5, 1943, there was sufficient testimony produced to show that on January 30, 1943 Heine, with knowledge of the Inches order of 1919, promised the defendants Witherspoon and Berg that no further meetings of the Fraternal Order of Police were contemplated while there was an order prohibiting membership in the Fraternal Order of Police and also promised defendants that nothing further would be done until the matter could be presented to the commissioner in an orderly manner for a change in the rule. Notwithstanding this conversation plaintiff Heine thereafter had gone directly from police headquarters to the organization meeting of the local Fraternal Order of Police, and permitted himself to be initiated and to be elected permanent president. The trial of plaintiff Duggan was on February 6, 1943. Plaintiff Duggan had been brought before the commissioner on February 1, 1943, had told the commissioner that he believed the rule was wrong and that he was going to remain a member notwithstanding the rule. Both plaintiffs Heine and Duggan were promptly found

guilty of insubordination and were dismissed from the department.

The record in this case shows that at the time of the discharge of the two plaintiffs the Fraternal Order of Police was substantially the same kind of an organization that it was as described in the case of *Fraternal Order of Police* v. *Lansing Board of Police & Fire Commissioners,* 306 Mich. 68. In that case we said (p. 80):

"The constitution and bylaws of plaintiff's national, state and local organizations which were received in evidence provide in effect that citizens may become associate members 'upon payment of dues of not less than $5 per year, and such associate members will be furnished 'a membership card' and car 'emblem.' One would be naive, indeed, to assume that such automobile emblem did not carry with it the intimation of special privileges to associate members. This of itself is enough to require the determination that the existence of plaintiff organization within the law-enforcement body of a municipality is contrary to public policy."

On the trial of this cause, March 28, 1945, plaintiffs offered some showing to the effect that the bylaws of the Detroit Lodge, Fraternal Order of Police, banned associate memberships and sale of car emblems. Defendant Witherspoon testified that the first time that he learned of such a prohibition in the bylaws of the local lodge was at the trial in question in March, 1945. However, the following statements were made by witness Duggan, February 1, 1943, in an interview before defendant commissioner Witherspoon:

"*Q.* You said at one time in describing the nature of this organization that you thought it was a good organization because the membership was restricted to police officers?

"*A.* Right.

"*Q.* Is that your understanding of the organization?

"*A.* Well, they have what is called associate membership.

"*Q.* That doesn't disturb you—you think that is perfectly proper?

"*A.* Well, that's a matter to be used with circumstances. If they take in men that put you in the middle, that's something not to permit.    *    *    *

"*Q.* They do permit them?

"*A.* Well, they do have provision for associate members."

The supposed amendments to the constitution, excluding associate members, and forbidding the sale of car emblems, if such amendments were ever actually made at all, must have been effectuated after the discharge of plaintiffs Heine and Duggan.

However, there is nothing in this record doing away with the force and effect of the undisputed showing that both plaintiffs Heine and Duggan were guilty of insubordination. We reiterate what was said by Justice BUSHNELL and those who concurred in his opinion in the case above cited, quoting from *Carter* v. *Thompson,* 164 Va. 312 (180 S. E. 410).

"Police and fire departments are in a class apart. Both are at times charged with the preservation of public order, and for manifold reasons they owe to the public their undivided allegiance. The power in the city of complete control is imperatively necessary if discipline is to be maintained."

The defendant commissioner is necessarily vested with a large measure of discretion and the burden of showing arbitrary action is upon those who charge it. Plaintiffs have not met such burden.

The order promulgated by the police commissioner of the city of Detroit is considered to be within

the scope of the authority granted under the charter of the city of Detroit, and cannot be said to be arbitrary or unreasonable. The plaintiffs are not deprived of any constitutional right.

The decree dismissing plaintiffs' bill of complaint is affirmed. A question of public importance being involved, no costs are allowed.

Carr, C. J., and Butzel, Bushnell, Sharpe, Boyles, North, and Dethmers, JJ., concurred.