LOCAL NO. 201 (AFL-CIO) *v.* CITY OF MUSKEGON.

1. Municipal Corporations—Police Department—Membership in Unions—Ambiguity in Regulations.

Contention that regulation, adopted by chief of police of home-rule city pursuant to resolution of city commission, barring members of the city's police force from membership in an "organization in any manner identified with any federation or labor union which admits to membership persons who are not members" of the city police department, requiring present police officers now members of such unions to disassociate themselves within 30 days, and providing that failure to comply would constitute reason for immediate dismissal, was ambiguous because of the inclusion of the word *federation held,* untenable (City of Muskegon Resolution No 61–165; Muskegon Municipal Code §§ 2–103, 2–104; Chief of Police Rule § 101).

2. Same—Police Department Regulations.

It may be assumed that in the adoption of measures regulating personnel of the police department of a home-rule city due consideration was given to local conditions and to the protection of the public interest generally.

3. Same—Police Department Regulation.

A home-rule city which maintains a police department may adopt reasonable rules for the regulation of such department.

4. Same—Police Department Regulation—Presumption of Validity.

The presumption of validity attaches to a regulation adopted by the chief of police of a home-rule city pursuant to resolu-

References for Points in Headnotes

[1, 4, 6, 11, 12, 13] 37 Am Jur, Municipal Corporations §§ 87, 109.
  31 Am Jur, Labor § 56.
  Union organization and activities of public employees. 31 ALR 2d 1142.
[2, 3, 5, 7] 37 Am Jur, Municipal Corporations §§ 87, 109.
[8, 9] 37 Am Jur, Municipal Corporations §§ 94, 222 *et seq.*
[10] 31 Am Jur, Labor §§ 56, 395.
[14] 14 Am Jur, Costs § 36.
  37 Am Jur, Municipal Corporations §§ 87, 109.
  31 Am Jur, Labor, § 56.
  Union organization and activities of public employees. 31 ALR2d 1142.

tion of the city commission barring police officers from membership in federations or labor unions which admit to membership persons who are not members of the city police department (City of Muskegon Resolution No 61–165; Muskegon Municipal Code §§ 2–103, 2–104; Chief of Police Rule § 101).

5. SAME—POLICE DEPARTMENT REGULATION—BURDEN OF SHOWING UNCONSTITUTIONALITY.

The party who assails the validity of a duly-adopted regulation of a home-rule city's police department has the burden of establishing that it is an unwarranted, and therefore arbitrary, interference with rights protected by constitutional guaranties (City of Muskegon Resolution No 61–165; Muskegon Municipal Code §§ 2–103, 2–104; Chief of Police Rule § 101).

6. SAME—POLICE DEPARTMENT—MEMBERSHIP IN FEDERATION OR LABOR UNION.

A home-rule city may properly exercise a right of control over the members of its publicly-maintained police department who have sought and obtained employment therein by prohibiting them from membership in a federation or labor union which admits to membership persons who are not the members of its police department (City of Muskegon Resolution No 61–165; Muskegon Municipal Code §§ 2–103, 2–104; Chief of Police Rule § 101).

7. SAME—POLICE DEPARTMENT—DISCIPLINE.

A municipal police department is charged with the preservation of public order and the members owe to the public their undivided allegiance, hence, the power of the municipality, as employer of the policemen, to complete control of them is necessary to maintain discipline.

8. SAME—PUBLIC EMPLOYEES—DISCIPLINE—DISRUPTION OF SERVICE.

A city in the exercise of reasonable supervision over its employees for the maintenance of proper discipline and avoidance of disruption of public service must be allowed a wide discretion in such respect.

9. CONSTITUTIONAL LAW—EMPLOYMENT IN GOVERNMENT SERVICE.

Neither the Constitution of the State nor of the United States gives to individuals the right to be employed in government service or the right to continue therein.

10. SAME—CLASSIFICATION—PUBLIC EMPLOYEES.

The right of public employees to collectively refuse to render the service for which they are employed differs in legal point of view from the right of private employees to strike, hence,

the classification of *public employees* for the purpose of applicable legislation is valid.

11. MUNICIPAL CORPORATIONS—POLICE DEPARTMENT REGULATION—MEMBERSHIP IN LABOR UNION.

A union which sought to show that regulation, promulgated by chief of police pursuant to resolution of city commission, barring members of home-rule city's police department from membership in any federation or labor union which admitted to membership persons who were not members of the city's police department, failed to show invalidity of such regulation as a denial of any constitutional right, since there is no constitutional right to appointment to the force, the city has authority to manage its local affairs and regulate its governmental departments and such regulation is a reasonable exercise of such authority in the interests of a fair and impartial administration of the law (City of Muskegon Resolution No 61–165; Muskegon Municipal Code §§ 2–103, 2–104; Chief of Police Rule § 101).

12. SAME—POLICE DEPARTMENT REGULATION—MEMBERSHIP IN LABOR UNION.

Contention that regulation of home-rule city chief of police barring membership by city's policemen in any federation or labor union admitting persons to membership who were not members of the city police department was contrary to State statute denying such cities the power to deny employment to a person because he is a member of any society incorporated under the laws of the State, whose membership is composed solely of law-enforcement officers *held*, without merit in suit to enjoin enforcement of the regulation by federation or labor union admitting to its membership others than policemen (CL 1948, § 117.1 *et seq.*; City of Muskegon Resolution No 61–165; Muskegon Municipal Code §§ 2–103, 2–104; Chief of Police Rule § 101).

13. SAME—POLICE DEPARTMENT REGULATION—VETERANS' PREFERENCE ACT.

The veterans' preference act does not preclude the adoption of a regulation of a home-rule city chief of police barring membership of police officers in a federation or labor union admitting others than members of the city's police department to membership in the union, since that act was not intended to infringe upon constitutional rights of local municipal government vested by the Constitution in cities of the State (Const 1908, art 8, § 20 *et seq.*; CL 1948, § 35.401 *et seq.*, as

amended; City of Muskegon Resolution No 61–165; Muskegon Municipal Code §§ 2–103, 2–104; Chief of Police Rule § 101).

14. Costs—Home-Rule Cities—Police Department Regulation— Membership in Labor Union.

    No costs are allowed on appeal from decree enjoining home-rule city and its officers from enforcing a duly-adopted regulation of its chief of police barring members of the police force from accepting or maintaining membership in a federation or labor union which accepted for membership persons who were not members of the city's police force (Const 1908, art 8, § 20 *et seq.*; CL 1948, § 35.401 *et seq.*, as amended; § 117.1 *et seq.*, as amended; City of Muskegon Resolution No 61–165; Muskegon Municipal Code §§ 2–103, 2–104; Chief of Police Rule § 101).

Appeal from Muskegon; Fox (Noel P.), J. Submitted November 5, 1962. (Calendar No. 39, Docket No. 49,590.) Decided March 7, 1963. Certiorari denied by the supreme court of the United States October 14, 1963.

Bill by Local No. 201, American Federation of State, County and Municipal Employees (AFL-CIO) and Donald F. Brustad, individually and as president of union, against the City of Muskegon, a municipal corporation, to restrain it from enforcing rule forbidding police officers to belong to federation or labor union which admits others to membership. Mandamus by same plaintiffs against various city officials to compel reconsideration of action or referendum thereon consolidated in trial court. No appeal from decision denying mandamus. Decree for plaintiffs. Defendant appeals. Reversed and remanded for dismissal.

*Marcus, McCroskey, Finucan & Libner (Jerry S. McCroskey,* of counsel), for plaintiffs.

*Poppen, Street & Sorensen (Harold M. Street,* of counsel), for defendant.

*Amicus curiae:*

*Rolland O'Hare* and *Harold Norris,* for American Civil Liberties Union of Michigan, asking affirmance.

Carr, C. J. The question at issue in this litigation concerns the validity of a rule adopted by the chief of police of the city of Muskegon on March 16, 1961. Such action was taken pursuant to sections 2–103 and 2–104 of the municipal code of ordinances which, insofar as material here, read as follows:

"Sec. 2–103 *Rules, regulations.*—The following rules and regulations shall govern the police department:

"Sec. 2–104 *Chief of police; powers and duties.*— (1) He shall be the director of the police department subject to these rules and regulations, and shall devote his full time and attention to the management of this department.

"(2) He shall be responsible for the government, efficiency and general good conduct of the police department, and shall supervise the instruction of the members of the department in their duties.

"(3) He shall have the power to prescribe, promulgate and enforce rules and regulations for the government of the members and employees of the department, which shall be approved by the city manager and filed with the city clerk, the city manager and the civil service commission. Each member of the department then shall be assumed to have knowledge of and shall become subject to such rules."

The rule in question was duly approved by the city manager and was filed as required by the code provisions. It reads as follows:

"*Sec. 101:* No police officer of the city of Muskegon police department shall hereafter be, or become a member of any organization in any manner identified with any federation or labor union which admits to

membership persons who are not members of the Muskegon police department, or which would in any way exact prior consideration and prevent such officer from performing full and complete police duty at any time. Any police officer now a member of such unions shall disassociate himself within 30 days from this date. Failure to comply will constitute reason for immediate dismissal."

The situation to which the rule was intended to apply obviously had been under consideration by municipal officers prior to the adoption of the rule. Under date of March 14, 1961, the Muskegon city commission took the action indicated by the following statement and resolution:

"61–165. *Resolution on banning of union affiliation by police officers adopted.*

"Certain of the police officers of the city of Muskegon police department are dues paying members of Local No. 201, Muskegon County and Municipal Employees Union affiliated with the American Federation of State, County and Municipal Employees, AFL-CIO.

"This commission, as well as past commissions, have seriously questioned whether a police officer can be a member of such a union and still enforce, impartially and without prejudice the laws of our city, county and State of Michigan.

"Every police officer who joins the Muskegon police department must take an oath of office to support the Constitution and bear allegiance to his city and State and its Constitution and laws and to the best of ability, skill and judgment, diligently and faithfully, without partiality or prejudice, execute his office. Police officers are invested with broad powers, few of which are given to any other government employee. They have the legal right to carry a weapon, their powers of restraint, arrest, and control of moral and physical behaviour of others are grave and serious. A police officer is required by law and

invariably becomes a neutralizer in controversies involving the right of public assemblage, neighborhood disputes, domestic difficulties and strikes, between labor and management. Again, his actions in these instances must be governed by his oath of office. He must recognize certain rights of people among which is the right of collective bargaining on the part of labor. Yet, at the same time, he must protect the rights and the property of management. In this instance, again, his neutrality must be the watchword of his every activity in the effort to protect the life and property of all those involved and to preserve peace and order during periods of such difficulty.

"This commission subscribes to this statement of responsibility and, as such, cannot further condone police officers of the city of Muskegon to continue to be members of a union.

"In the belief that we are acting in the best interest of all of the citizens of the city of Muskegon, the following resolution is presented.

"Commissioner Carlson offered the following resolution and moved its adoption:

"No police officer of the city of Muskegon police department shall hereafter be, or become, a member of any organization in any manner identified with any federation or labor union which admits to membership persons who are not members of the Muskegon police department, or which would in any way exact prior consideration and prevent such officer from performing full and complete police duty at any time. Any police officer now a member of such unions shall disassociate himself within 30 days from this date. Failure to comply will constitute reason for immediate dismissal."

It is apparent that the rule promulgated by the chief of police was designed to carry out the purpose expressed by the resolution of the legislative body of the city. Plaintiffs in the instant litigation objected to the action taken and under date of April 7, 1961, filed a petition for a writ of mandamus to com-

pel the city commission to reconsider its action or to submit the matter to a referendum vote under charter provisions applicable to ordinances. The trial court concluded that the resolution of the commission was not an ordinance and was, in consequence, not subject to a referendum.

On the same date that the mandamus proceeding was instituted plaintiffs filed suit in equity seeking injunctive relief against the enforcement of the commission's action and of the rule or regulation adopted by the chief of police. On the filing of the suit a temporary injunction was issued and proofs were taken in the case in April, 1961. On behalf of plaintiffs it was contended in the trial court that the regulation in question was uncertain in its provisions in that the word "federation" created an ambiguity, that the municipal action was arbitrary and unreasonable, and that it operated to deprive plaintiffs, and members of the police force of the city of Muskegon who were also members of the plaintiff union, of rights protected by State and Federal Constitutions. The trial court agreed with the contentions of the plaintiffs and entered a decree accordingly. Defendants have appealed.

We are unable to agree with the contention that the rule as adopted by the chief of police of defendant city is ambiguous because of the inclusion of the word "federation" therein. A reading of the entire rule leaves no question as to its purpose and intent. The reference therein to "such unions" indicates clearly the meaning to be ascribed to the expression "federation or labor union." A reading of the record suggests the absence of any question as to the application of the rule, if otherwise valid, to the plaintiffs herein.

The basic question at issue is whether the defendant city may through its duly constituted authorities prescribe a regulation of the character here involved

for the members of its police department. It may be assumed that in taking the action in question due consideration was given to local conditions and to the protection of the public interest generally. That a municipality maintaining a police department may adopt reasonable rules in connection therewith is not open to question. Opinions may perhaps differ as to what may be regarded as reasonable, or as the converse thereof. In the instant case the presumption of validity attaches to the regulation adopted by the chief of police pursuant to the code of ordinances of the city, and the burden rests on those assailing it to establish that there is an unwarranted, and therefore arbitrary, interference with rights protected by constitutional guaranties. If the municipality has acted within the scope of its powers, the regulation must be sustained.

Basically the question at issue is whether the city may exercise over the members of its police department the right of control asserted by the rule in question, rather than the effect of such rule on those employees who are within its scope. The restriction imposed is not directed at a class as such but, rather, solely at those who have sought and obtained employment in the police department of the defendant city. Decisions cited by counsel for plaintiffs relating to racial discrimination are not in point. Like comment may be made with reference to *De Jonge* v. *Oregon*, 299 US 353 (57 S Ct 255, 81 L ed 278), which involved the validity of the criminal syndicalism law of Oregon as applied to public meetings at which no unlawful conduct, teaching, or advocacy of unlawful acts, was discussed or urged.

In *Fraternal Order of Police* v. *Lansing Board of Police & Fire Com'rs*, 306 Mich 68, this Court had before it a suit brought by the plaintiff to restrain the defendant board from enforcing a resolution designed to prevent members of the police department

from becoming members of the plaintiff organization. Plaintiff accepted as associate members private citizens who paid small fees for joining and were given identification tags that might be attached to their automobiles. It was held that defendant had acted within the scope of its authority and that neither plaintiff organization nor any of its members had been deprived of constitutional rights. In reaching such conclusion it was said, in part (p 80):

"The constitution and bylaws of plaintiff's national, state and local organizations which were received in evidence provide in effect that citizens may become associate members upon payment of dues of not less than $5 per year, and such associate members will be furnished 'a membership card' and car 'emblem.' One would be naive, indeed, to assume that such automobile emblem did not carry with it the intimation of special privileges to associate members. This of itself is enough to require the determination that the existence of plaintiff organization within the law-enforcement body of a municipality is contrary to public policy.

"Defendant board is necessarily vested with a large measure of discretion and the burden of showing arbitrary action is upon those who charge it."

The above decision was followed in *State Lodge of Michigan, Fraternal Order of Police,* v. *City of Detroit,* 318 Mich 182, which involved a regulation of the police commissioner of defendant city forbidding members of the police force from being members of a fraternal order allowing other citizens to become associate members. The Court quoted (p 189) with approval from the opinion in *Carter* v. *Thompson,* 164 Va 312, 317 (180 SE 410), as follows:

" 'Police and fire departments are in a class apart. Both are at times charged with the preservation of public order, and for manifold reasons they owe to the public their undivided allegiance. The power in

the city of complete control is imperatively necessary if discipline is to be maintained.' "

In accord with prior holdings of this Court is the decision in *Perez* v. *Board of Police Commissioners of the City of Los Angeles,* 78 Cal App 2d 638 (178 P2d 537). At issue there was a resolution of the board of police commissioners of Los Angeles forbidding police officers of the city to become members of any organization identified with "any trade association, federation or labor union which admits to membership persons who are not members of the Los Angeles police department, or whose membership is not exclusively made up of employees of the city of Los Angeles." The action of the trial court in sustaining the resolution was upheld. It was specifically held that there was no violation of the 14th amendment to the Federal Constitution, and that the order of the defendant board was not arbitrary or unreasonable. In reaching the determination indicated, it was said in part (pp 646, 647):

"Whether a rational connection exists between union membership and lack of competency as a police officer, obviously, is a matter of opinion. And the question was solely one for the board of police commissioners to determine. Regardless of what the constitution and by-laws of any organization might provide for or against, it is idle to argue that such constitution and by-laws cannot be changed by amendment. Moreover, it was for the board of police commissioners, as the representatives, agents and servants of the people, to determine what the first duties, indeed, all of the duties, of a police officer should be. It should be noted also, that the board of police commissioners probably took into account the fact that labor unions are active politically, whereas civil service employees are prevented by law and as a condition of employment, from taking an active part in politics while on official duty or during

working hours and, that means would be thus provided for doing indirectly and with impunity, that which the law specifically prohibits."

The Court also quoted from the opinion of the trial judge as follows (pp 644, 645):

" 'In *Hayman* v. *City of Los Angeles,* 17 Cal App 2d 674, 679 (62 P2d 1047), in considering a question whether the discharge of a civil service employee was in violation of his rights to freedom of speech and of the press, and arbitrary, the court said:

" ' "The right which is involved here is not that which petitioner thinks has been denied him, but is the right of respondents to exercise a reasonable supervision over city employees, to the end that proper discipline may be maintained and that activities among employees be not allowed to disrupt or impair the public service. Such is not only the right but the duty of the city and its several departments. In the exercise of this duty they must be allowed a wide discretion and their acts are not subject to review by the courts until they have reached the point of illegality."

" 'The rule adopted by the resolution here in question does not on its face appear unreasonable or arbitrary in the light of the foregoing authorities. Nor is it in violation of any constitutional right of police officers. If the rule is necessary and reasonable it cannot be charged with wrongfully depriving the police members of any constitutional right. All such rights are relative. Nor does the rule amount to a bill of attainder, nor does it produce or inflict any of the incidents of such a legislative act. It was the result of a decision by the board in the exercise of that wide discretion which is accorded to them. Neither this court nor any judge thereof has the power to substitute its or his contrary views as to the propriety, necessity, desirability or reasonableness of the rule. The rule having been created by the board under and within its charter powers, and no appearance of unreasonableness or arbitrariness

or unconstitutionality manifesting itself therein, it must be concluded that such rule cannot have reached the point of illegality and subject to review and annulment by the courts either by direct action or by means of injunction against enforcement thereof.' "

The regulation involved in the instant case is limited in its application to members of the police department of the city of Muskegon and it applies to them solely in their capacity as such members. As this Court pointed out in *City of Detroit* v. *Division 26 of the Amalgamated Association of Street, Electric Railway & Motor Coach Employees of America,* 332 Mich 237, there is no provision of either State or Federal Constitution which gives to individuals the right to be employed in government service or the right to continue therein. In said case the constitutionality of the so-called Hutchinson act[1] was upheld as applied to the Detroit transportation system and the employees thereof. In disposing of the issues raised it was said, in part (pp 247, 248):

"There is ample authority to the effect that public employment does not vest in such employees any fixed or permanent rights of employment. As individuals or in groups public employees may discontinue their employment, but, having done so, such public employees have no vested right to insist upon their re-employment on terms or conditions agreeable to the employees, or even without compliance with such conditions. To hold otherwise would result in public agencies being powerless to render public service and to effectively administer public affairs; and the public would thereby be deprived of its right to efficient government. For example, if the members of a fire department or of a police department collectively refuse to continue to serve except upon conditions insisted upon by them, unless their

[1] PA 1947, No 336 (CL 1948, § 423.201 *et seq.* [Stat Ann 1960 Rev § 17.455(1) *et seq.*]).

employer supinely yielded, the public, which by taxation pays therefor, would be deprived of fire or of police protection; and the right or power to exercise essential governmental affairs nullified. There seems to be ample reason and authority for holding that the right of public employees to collectively refuse to render the service for which they are employed differs in legal point of view from the right of private employees to strike, and hence the classification of 'public employees' for the purpose of applicable legislation is valid."

Plaintiffs herein have not borne the burden of proof of showing that members of the police department of Muskegon are deprived by the enforcement of the regulation in question of any constitutional rights to which they are entitled. As before suggested, they cannot claim a constitutional right to be appointed as members of said department, or to continue therein. They are subject to the authority of the municipality, granted by the Constitution and laws of the State, to manage its local affairs and to regulate the departments of municipal government. The duly constituted authorities of the city have concluded that the regulation here under attack is reasonably required in the interests of a fair and impartial administration of the law by those entrusted with its enforcement, without discrimination or partiality. The basic principles recognized in the prior decisions of this Court and by courts in other States as well are applicable here. On the record before us it may not be said that the rule is unreasonable or arbitrary in its application.

In addition to the questions raised in circuit court and passed on there, plaintiffs claim on appeal that the decree entered should be upheld on the theory that the regulation promulgated by the chief of police of Muskegon contravenes PA 1952, No 225 (CLS 1956, § 117.5a [Stat Ann 1961 Cum Supp § 5.2084

(1)]). Said act, which amended the city home-rule act[2] by adding section 5a, reads as follows:

"No city shall have power to deny employment except by city ordinance to any person for the reason that he is a member of any society which is incorporated under the laws of this State, the membership of which is composed solely of law enforcement officers, unless same is contrary to his oath of office."

In the instant case we are not concerned with membership by police officers of defendant city in any organization or society composed solely of law-enforcement officers. The suggestion that the section quoted is contravened by the municipal regulation under consideration is without merit. Neither may it be said that the veterans' preference act of the State[3] precludes the adoption of such a regulation or its application to members of the police department of a home-rule city. Said act was not intended to infringe upon constitutional rights of local municipal government vested by the Constitution in cities of the State.[4] *Smith* v. *Flint City Commission*, 258 Mich 698, 700, 701.

The decree of the circuit court of Muskegon county is reversed and the case is remanded with directions to dismiss plaintiffs' bill of complaint. No costs are allowed.

Dethmers, Kelly, Black, Kavanagh, Souris, and Otis M. Smith, JJ., concurred.

O'Hara, J., took no part in the decision of this case.

---

[2] PA 1909, No 279, as amended (CL 1948, § 117.1 *et seq.*, as amended [Stat Ann 1949 Rev and Stat Ann 1961 Cum Supp § 5.2071 *et seq.*]).

[3] PA 1897, No 205, as amended (CL 1948, § 35.401 *et seq.*, as amended [Stat Ann 1961 Rev § 4.1221 *et seq.*]).

[4] See Const 1908, art 8, § 20 *et seq.*—Reporter.