## ALLISON v CITY OF SOUTHFIELD

Docket No. 94643. Submitted June 8, 1987, at Lansing. Decided November 7, 1988.

Fred Allison and others, Southfield police officers, brought an action against the City of Southfield, its public safety director and its former police chief in the Oakland Circuit Court for a declaratory judgment that a police department rule regulating secondary employment of police officers was unconstitutional. Plaintiffs sought permission to conduct a private investigation business to conduct preemployment investigations for clients. Permission was denied. The court, Fred M. Mester, J., held the rule to be unconstitutional as applied to plaintiffs on the ground of vagueness. Defendants appealed.

The Court of Appeals *held:*

1. A statute or regulation violates the first essential of due process of law where it forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. The rule in question is not unconstitutionally vague.

2. A police department regulation violates due process where there is no rational connection between the regulation and the promotion of safety of persons and property. Concerns over potential conflicts of interest, potential misuse of confidential police information, potential appearances of favoritism and potential civil liability of the city were sufficient to uphold the rule against asserted due process deficiency.

3. The plaintiffs were not denied equal protection of the law in being refused permission to operate the proposed business.

4. The standards in the rule are as reasonably precise as the subject matter allows and the exercise of discretion in this case was not arbitrary and capricious.

Reversed.

1. CONSTITUTIONAL LAW — DUE PROCESS — VAGUENESS.

A statute or regulation violates the first essential of due process

REFERENCES

Am Jur 2d, Constitutional Law §§ 384 *et seq.,* 816-818.
Supreme Court's application of vagueness doctrine to noncriminal statutes or ordinances. 40 LEd 2d 823.

of law where it forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.

2. CONSTITUTIONAL LAW — DUE PROCESS — POLICE DEPARTMENT REGULATIONS.

A police department regulation violates due process where there is no rational connection between the regulation and the promotion of safety of persons and property; the paramilitary nature of a police force commands a more deferential approach to the constitutional protections of police officers than those afforded the general public, particularly where the liberty interest at stake is not a recognized right of a fundamental nature.

3. CONSTITUTIONAL LAW — DUE PROCESS.

Underlying due process safeguards is the right not to have determinations made in an arbitrary and capricious manner without reasonable standards; however, those standards need only be as reasonably precise as the subject matter requires or permits; the mere possibility of a misapplication of a discretionary exemption from a prohibitory rule is not enough to render the rule constitutionally invalid per se.

*Carson, Fischer & Potts* (by *David William Potts* and *Harry Joel Newman*), for plaintiffs.

*Susan P. Ward,* Assistant City Attorney, for defendants.

Before: GRIBBS, P.J., and HOLBROOK, JR., and W. MOORE, JR.,* JJ.

HOLBROOK, JR., J. Defendants, the City of Southfield, its director of public safety, and its former chief of police, appeal from an order granting a declaratory judgment that PR 3.01, an internal police rule regulating secondary employment, was unconstitutional as applied to plaintiff police officers employed by the city. Secondary employment

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

refers to the practice of public employees holding an additional, part-time job. We reverse.

Plaintiffs desire to conduct a part-time business as private investigators in addition to their employment as police officers. To that end, they formed a corporation and applied for a private investigator license. Their stated business purpose was to serve civil process and to perform preemployment investigations of their clients' prospective employees. Despite plaintiffs' assurances that they would conduct their business to avoid any conflict of interest with their duties as police officers and that they would not compromise confidential police information, the chief of police advised plaintiffs that they were denied permission to engage in their proposed secondary employment. After unsuccessfully exhausting grievance procedures, plaintiffs instituted this action for declaratory judgment.

At issue is the constitutionality of PR 3.01, which was the stated policy relied upon by defendants in denying plaintiffs permission to engage in secondary employment. This rule states in pertinent part:

> Members of the Southfield Police Department shall devote their entire time and attention to the service of the Department. They are expressly prohibited from engaging in any other business or employment during ON or OFF DUTY hours, while on leave or furlough, unless approval has been granted by the Chief of Police or his duly authorized representative in writing.
>
> A. Definition of business activity
>
> 1. Business activity includes participation in or affiliation with any commercialized business activity, except solely by investments, for the purpose of financial gain.
>
> B. Members desiring outside employment

1. Members of the Department who desire to engage in outside employment or business activities must request authorization by submitting an application through channels, to the Chief of Police. Application must contain:

a. The nature of employment or business activity.

b. The nature of duties to be performed, including the number of hours per day which will be worked.

c. The anticipated length of time such member expects to engage in outside employment or business activity.

d. Whether the officer submitting the request will be available for call-back emergency duty.

C. Certain types prohibited: Request for permission *will not* be granted in the following cases:

1. Engaging in employment or business that is licensed by the State of Michigan Liquor Control Commission.

2. Employment where the *Uniform of the Department* would be worn (unless otherwise authorized by Council action).

3. When the employment or business activity is of such nature or is so located that the officer would not be available for call-back emergency duty.

4. Employment of personnel working in the capacity of private "Security Guard" where a conflict of interest or separation of authority would exist. [Emphasis in the original.]

The circuit court invalidated the rule on the ground that it was impermissibly vague because plaintiffs were unable to discern what types of secondary employment are prohibited. The court further stated that "[w]ithout sufficient guidelines, the decision making process becomes arbitrary, capricious and infringes upon Plaintiffs' right to due process under the law."

A statute or, in this case, a regulation is viola-

tive of due process on the ground of vagueness when it "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *People v Biegajski,* 122 Mich App 215, 225; 332 NW2d 413 (1982), lv den 417 Mich 1080 (1983) (quoting *Lanzetta v New Jersey,* 306 US 451, 453; 59 S Ct 618; 83 L Ed 888 [1939]). Essentially, the doctrine of vagueness ensures that a regulation give its readers fair notice of what types of conduct are prohibited. *People v Webb,* 128 Mich App 721, 725-727; 341 NW2d 191 (1983), lv den 418 Mich 966 (1984). Here the meaning of what the regulation prohibits is not at all obscure—police employees are unambiguously prohibited from secondary employment unless prior approval is obtained. Thus, this case lacks the vagueness problems presented by regulations prohibiting conduct unbecoming a police officer. See *Sponick v Detroit Police Dep't,* 49 Mich App 162, 174-176; 211 NW2d 674 (1973); *Golembiowski v Madison Heights Civil Service Comm,* 93 Mich App 137, 153-156; 286 NW2d 69 (1979), lv den 408 Mich 893 (1980). But cf. *Rinaldi v Livonia,* 69 Mich App 58, 65-68; 244 NW2d 609 (1976). Even if one of the evils sought to be prevented by the vagueness doctrine is the vesting of unstructured discretion and the resultant arbitrary and discriminary enforcement of the law, see *People v McCumby,* 130 Mich App 710, 713-714; 344 NW2d 338 (1983), lv den 419 Mich 911 (1984), the doctrine is not triggered unless the wording of the promulgation is itself vague. We conclude that, whatever constitutional deficiencies may be presented in this case, PR 3.01 is not void for vagueness.

Plaintiffs argue in the alternative that PR 3.01 violates their right to substantive due process. We look to *Kelley v Johnson,* 425 US 238; 96 S Ct

1440; 47 L Ed 2d 708 (1976), for the standard to evaluate a due process challenge to the power of a police department to regulate its officers. In *Kelley,* the Supreme Court held that the right to due process is violated if the party challenging the regulation "can demonstrate that there is no rational connection between the regulation, based as it is on the county's method of organizing its police force, and the promotion of safety of persons and property." *Id.,* p 247. Thus, the burden of proof rests with plaintiffs here. See also *Local No 201 (AFL-CIO) v Muskegon,* 369 Mich 384, 392; 120 NW2d 197 (1963), cert den 375 US 833; 84 S Ct 54; 11 L Ed 2d 64 (1963). The Court in *Kelley* upheld the validity of a police regulation governing the length of officers' hair. The Court noted that the paramilitary nature of a police force commands a more deferential approach to the constitutional protections of police officers than those afforded the general public, particularly when the Fourteenth Amendment liberty interest at stake is not a recognized right of a fundamental nature, but merely implicates "the more general contours of the substantive liberty interest." *Kelley, supra,* p 245. Therefore, the Court held that the state interest in requiring a uniform appearance of police officers was justified by the need to make officers recognizable as such to the public or the need to enhance esprit de corps. Either was a "sufficiently rational justification" to defeat a due process challenge, notwithstanding the lower court's finding that the police force had failed to demonstrate a public need for the regulation. *Id.,* p 248.

Plaintiffs do not controvert the authority of the chief of police under city ordinances to regulate secondary employment so that legitimate police interests are not impeded. We think that it is beyond peradventure that regulation of police sec-

ondary employment is within the constitutionally permissible scope of regulation recognized in *Kelley.* This position is also in accord with the weight of authority from other jurisdictions. See 94 ALR3d 1230, §§ 2-3, 5, pp 1233-1240, 1242-1245.

In support of PR 3.01, defendants asserted that the operation of a private investigation business would present potential conflicts of interest between plaintiffs' employment as police officers and their secondary employment as private investigators. Defendants particularly emphasized the potential for misuse of confidential police information in furtherance of private investigatory activities. Defendants also feared that the operation of a joint enterprise among police officers holding different ranks on the force would create the appearance of favoritism when the same officers exercised their supervisory authority over each other in the course of police duties. Other reasons cited by defendants included the possible pursuit of police time to pursue private investigatory functions and the potential civil liability of the city for acts committed by plaintiffs acting as private investigators. We conclude that these concerns amount to a sufficiently rational justification to uphold PR 3.01 against an asserted due process deficiency. In so deciding, we do not suggest that the circuit court's finding that plaintiffs' proposed business does not interfere with the effective performance of their duties as police officers was clearly erroneous. See *Saunders v Dearborn,* 107 Mich App 499, 507; 309 NW2d 641 (1981). Rather, that finding was beside the point. Once a rational justification for PR 3.01 was established, judicial inquiry could advance no further. The courts may not second-guess its wisdom. *Shavers v Attorney General,* 402 Mich 554, 613-615; 267 NW2d 72 (1978). Plaintiffs' burden was to demonstrate that the policy judgment un-

derlying PR 3.01 was wholly "without rational basis" or that there was a lack of "*any* reasonable state of facts on the record which can be produced in support of the legislative judgment." *Id.,* p 615. (Emphasis in the original.) Plaintiffs could not carry this burden by merely controverting whether the potential problems asserted by defendants would in fact impede plaintiffs from exercising their duties as police officers.

Plaintiffs also argue that PR 3.01 is unconstitutional as applied because the decision withholding permission for secondary employment, viewed in the context of prior permission granted to other officers, discriminated against plaintiffs, thereby depriving them of their equal protection rights. Although an equal protection theory was not explicitly advanced in the proceedings below, thus precluding the necessity for us to consider it now, see *Barnes v Double Seal Glass Co, Inc,* 129 Mich App 66, 77; 341 NW2d 812 (1983), we exercise our discretion to address this issue on its merits in view of its similarity to other constitutional issues properly raised and because all necessary facts have been established of record.

Since plaintiffs have not demonstrated an abridgement of any fundamental right sufficient to invoke a strict scrutiny analysis, we employ the traditional approach to equal protection claims, which requires us to determine whether the asserted distinction made by defendants between plaintiffs and other employees receiving secondary employment permission was rationally related to a legitimate government interest. *Shavers, supra,* p 613; *Michigan Ed Ass'n v State Bd of Ed,* 163 Mich App 92, 96; 414 NW2d 153 (1987). Plaintiffs make reference to other police officers who received permission to work as an administrator (limited to noninvestigatory duties) for a firm engaged in

security work, as an accident reconstruction expert, as a consultant for a security alarm business, and as an attorney practicing civil law. Based on the record, we conclude that defendants could have reasonably believed that the nature and extent of plaintiffs' proposed activities were more conducive to potential abuse of police prerogatives and to potential interference with police duties than those activities for which permission had previously been granted. For instance, one of plaintiffs' primary expectations of business activity, the performance of preemployment investigations, would require information that could tempt even the most honest police officer to misappropriate or misuse police resources. We think it rational to conclude that private investigatory work overlaps with the normal duties of a police officer to an extent not implicated by the more specialized functions practiced by the other officers engaged in secondary employment. Thus, the denial of plaintiffs' request for permission to become employed as private investigators, viewed in conjunction with permission granted for other types of secondary employment, does not lack a rational basis.

Plaintiffs argue that the lack of guidelines in PR 3.01 governing the determination of the chief of police to grant or deny permission to engage in secondary employment subjects police officers to the possibility of arbitrary, capricious, and discriminatory treatment, thus violating their due process rights. "Underlying due process safeguards is the right not to have determinations made in an arbitrary and capricious manner without reasonable standards." *Casad v City of Jackson,* 79 Mich App 573, 577-578; 263 NW2d 19 (1977). However, those standards need only be "as reasonably precise as the subject matter requires or permits." *Osius v St*

*Clair Shores,* 344 Mich 693, 698; 75 NW2d 25 (1956). The mere possibility of a misapplication of a discretionary exemption from a prohibitory rule is not enough to per se render the rule constitutionally invalid. *Williams v Civil Service Comm of Detroit,* 383 Mich 507, 515-518; 176 NW2d 593 (1970).

In view of the sweeping powers accorded to the police to maintain internal discipline in accordance with the paramount necessity of public safety, we are not persuaded that the standards here are insufficient. Although PR 3.01 does not explicitly provide standards, we find standards readily inferable from the contents of the required application for permission (PR 3.01[B]) and from the listing of activities for which permission will not be granted (PR 3.01[C]). The underlying policy of PR 3.01 is clearly to ensure that police officers are not distracted from performance of their duties by conflicts of interest and other competing situations created by secondary employment. Given the diverse types of secondary employment in which police officers could potentially engage, we think it would be difficult, if not impossible, to more precisely delineate between the permissible and the impermissible. A case-by-case approach is warranted, and the flexibility entailed by the discretionary authority exercised by the chief of police is justified. This is not a case involving a delegation of legislative power without standards to regulate the general public, but is rather a matter of the internal governance of police discipline, exercised by a supervisor over subordinate public employees. Cf. *Westervelt v Natural Resources Comm,* 402 Mich 412; 263 NW2d 564 (1978). Given the strong governmental interest for refusing police officers permission to work as private investigators, we also conclude that the actual exercise of discretion

in this case was not arbitrary or capricious. *Harmon v Southfield,* 91 Mich App 731, 735; 284 NW2d 170 (1979), lv den 408 Mich 862 (1980).

We also reject the contention that PR 3.01 is impermissibly overbroad. No constitutionally protected conduct is impermissibly chilled by the requirement that a police officer obtain prior permission before engaging in secondary employment. *McCumby, supra,* pp 713-716. This aspect of our decision inevitably follows from our holding that the power of the city to regulate secondary employment as exercised in PR 3.01 does not contravene constitutional limitations. Unlike *Sponick, supra,* p 179, PR 3.01 circumscribes the freedom to engage in secondary employment only to the extent reasonably and narrowly related to the effective performance of a police officer's duties.

It is our conclusion that the trial court erred by deciding that PR 3.01 was void for vagueness and unconstitutional as applied. We further hold that PR 3.01 did not infringe in an unconstitutional manner on plaintiffs' due process and equal protection rights.

Reversed.

W. MOORE, JR., did not participate.