CITY OF ESCANABA *v.* LABOR MEDIATION BOARD

OPINION OF THE COURT

1. LABOR RELATIONS—PUBLIC EMPLOYEES—POLICE OFFICERS—UNION REPRESENTATION—PUBLIC POLICY—STATUTE.

The public employment relations act states the public policy of this state with respect to union representation of public employees; the provision in that statute which makes it lawful for public employees to organize together in labor organizations to engage in lawful concerted activities for the purpose of collected negotiation or other mutual aid and protection, or to negotiate or bargain collectively with their public employers through representatives of their own free choice does not restrict the police officers of a city to representation by a labor organization composed exclusively of law enforcement officers (CL 1948, § 423.209 as enacted by PA 1965, No 379).

2. LABOR RELATIONS—WORDS AND PHRASES—PUBLIC EMPLOYEE—DEFINITION—STATUTE.

A "public employee" is defined by statute as a person holding a position by appointment or employment in the government of the state of Michigan, or in the government of any one or more of the political subdivisions thereof, or in the public school service, or in any public or special district, or in the service of any authority, commission, or board, or in any other branch of the public service (CL 1948, § 432.202).

3. LABOR RELATIONS—WORDS AND PHRASES—PUBLIC EMPLOYEES—DEFINITION—POLICE OFFICERS—STATUTE.

The definition of "public employee," as contained in the public employment relations act, includes police officers (CL 1948, § 423.202).

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4, 5, 7] 31 Am Jur, Labor §§ 56, 87.
[3, 6] 47 Am Jur, Sheriffs, Police and Constables § 5.

4. LABOR RELATIONS—PUBLIC EMPLOYEES—POLICE OFFICERS—UNION REPRESENTATION.

Provision in the home rule cities act that prohibits a city from discharging a policeman who joins a society composed solely of law enforcement officers cannot be construed to give a city the power to restrict its police officers' choice of a union representative to one that consists solely of police officers (CL 1948, § 117.5a as amended by PA 1965, No 260).

DISSENTING OPINION
HOLBROOK, J.

5. LABOR RELATIONS—PUBLIC EMPLOYEES—POLICE OFFICERS—UNION REPRESENTATION—PUBLIC POLICY.

*Public policy requires that government officers having the duty of making, interpreting, and enforcing the laws may not strike and may not join with others in any union organization which would interfere with such officers' undivided loyalty to their oaths of office and to their duties; therefore police officers should not be permitted to join with others in any union organization which could place the officers in the position of having to regulate fellow union members.*

6. LABOR RELATIONS—WORDS AND PHRASES—PUBLIC OFFICIALS—PUBLIC EMPLOYEES—POLICE OFFICERS.

*Police officers are public officials and not public employees.*

7. LABOR RELATIONS—PUBLIC EMPLOYEES—POLICE OFFICERS—UNION REPRESENTATION—BARGAINING UNIT—LABOR MEDIATION BOARD.

*Determination by State Labor Mediation Board that city police officers and sergeants were a proper bargaining unit and that a Teamsters' local was a proper bargaining representative was improperly made where no evidence was taken regarding the status of the police officers as public officers or public employees and a possible conflict of interest resulting from policemen joining a labor union which admits other than law enforcement officers to its membership.*

Original proceeding in Court of Appeals. Submitted Division 3 February 13, 1969, at Grand Rapids. (Docket No. 4,634.) Decided October 1, 1969.

Statutory complaint by the city of Escanaba, a municipal corporation, against the State Labor Mediation Board and Local No. 328, International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America for review of a decision by defendant board that plaintiff's police officers and sergeants were employees rather than public officers and that defendant union was a proper bargaining representative for the policemen, and review of an order directing a representation election and ordering plaintiff to bargain with the elected representative. Decision of Michigan Labor Mediation Board upheld.

*John G. Erickson,* City Attorney, (*Keller, Thoma, McManus & Keller,* of counsel), for plaintiff.

*Goldberg, Previant & Uelmen,* for defendant Local No. 328.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *John J. Long,* Assistant Attorney General, for defendant State Labor Mediation Board.

Before: LEVIN, P. J., and HOLBROOK and DANHOF, JJ.

DANHOF, J. This case involves the city of Escanaba in relation to the right of its police officers to join Local No. 328, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. In March of 1966, Local No. 328 petitioned the Michigan Labor Mediation Board (hereinafter referred to as MLMB) for an election in a unit of all patrolmen and sergeants of the Escanaba police department, pursuant to the provisions of the

public employment relations act (hereinafter referred to as PERA).[1] A hearing was held May 18, 1966, with the city objecting to the ordering of an election. At the hearing Local No. 78 of the American Federation of State, County and Municipal Employees intervened claiming that MLMB should not certify a labor union which represented employees in private industry as the exclusive representative of law enforcement officers. At the time, Local No. 78 had been recognized by the city of Escanaba as the city employees' representative. On November 3, 1966, the labor mediation board determined that a unit of patrolmen and sergeants was appropriate for bargaining and ordered an election which was held November 17, 1966. The 12 police officers and 4 sergeants voted in favor of being represented by Teamsters Local No. 328, and the union was formally certified by the MLMB on November 25, 1966.

The city of Escanaba refused to bargain with Teamsters Local No. 328 and on February 7, 1967, the union filed an unfair labor practice charge against the city for alleged violation of § 10 (a) and (e) and § 16 of the PERA.[2] On February 15, 1967, the Escanaba city council adopted a resolution,[3] stat-

---

[1] PA 1947, No 336, as last amended by PA 1965, No 379 (CL 1948, § 423.201 et seq. [Stat Ann 1968 Rev § 17.455 (1) et seq.]).

[2] MCLA §§ 423.210, 423.216 (Stat Ann 1968 Rev §§ 17.455[10], 17.455[16]).

[3] "Whereas, November 3, 1966, the Labor Mediation Board issued a decision holding (a) that police officers employed by the city of Escanaba were lawfully entitled, under the public employment relations act, Act No 336, PA Mich 1947, as amended, to be represented for collective bargaining purposes, if they so desired by a labor organization admitting to membership and representing employees who were not (law enforcement officers) and (b) that police sergeants employed by the city of Escanaba were not supervisors within the meaning of said act.

"Whereas, every police officer who joins the Escanaba police department must take an oath of office to support the constitution and bear allegiance to his city and state and its constitution and laws and to the best of ability, skill and judgment, diligently and faith-

ing in effect that the city would not recognize as bargaining agents for the police officers any labor union that included outside interests or membership or any personnel other than law enforcement or police officers. On March 6, 1967, the city of Escanaba filed a motion for a rehearing with the MLMB of its findings and order of November 3, 1966, and to dismiss the petition of the Teamsters, Local No. 328, on the ground that under the State and city public policy, police officers are limited in selecting a labor union as their representative for collective bargaining purposes to a labor organization composed solely

---

fully, without partiality or prejudice, execute his office. Police officers are invested with broad powers, few of which are given to any other government employee. They have the legal right to carry a weapon, their powers of restraint, arrest and control of moral and physical behavior of others are grave and serious. A police officer is required by law and invariably becomes a neutralizer in controversies involving the right of public assemblage, neighborhood disputes, domestic difficulties and strikes, between labor and management. Again, his actions in these instances must be governed by his oath of office. He must recognize certain rights of people among which is the right of collective bargaining on the part of labor. Yet, at the same time, he must protect the rights and the property of management. In this instance, again, his neutrality must be the watchword of his every activity in the effort to protect the life and property of all those involved and to preserve peace and order during periods of such difficulty, and

"Whereas, if police officers are members of, and are represented for the purpose of negotiating advantageous agreements with respect to wages, hours, and the terms and conditions of employment, by a labor organization which also represents as members others who are not police officers, the personal and economic interests of such police officers and their fellow-members of the labor organization would necessarily from time to time conflict with the public duties of such police officers, especially in the event of strikes, picketing, and other labor disputes; and such conflicts would undoubtedly be detrimental to the public interest of the city of Escanaba and its citizens, and

"Whereas, the police sergeants hold positions of command, and the importance of their responsibilities has been overlooked by the decision of the Labor Mediation Board, and

"Whereas, the city council has been advised by its attorneys that the Labor Mediation Board may have been in error in failing to recognize the public interest, as expressed herein, and in classifying the police sergeants as non-supervisors,

"Now, therefore, be it resolved, that the city of Escanaba will not recognize, as bargaining agents for the police department, any labor union that includes outside interests or membership or any personnel other than law enforcement or police officers."

of law enforcement officers. This motion was denied by the MLMB on April 21, 1967.

The hearing on the complaint of Local No. 328 to the MLMB was heard April 4, 1967. At this hearing the city sought to introduce evidence to show a conflict of interest if police officers were permitted to join a union representing private employees in industry. Such evidence was rejected. The trial examiner did state that the board would take administrative notice of the fact that strikes in public employment have occurred in Michigan; that there have been periodic occurrences of labor disputes, including picket line disturbances; and of the role of police officers in controlling such situations.

The trial examiner's determination and recommended order was issued April 26, 1967, and the resulting MLMB order of July 14, 1967, incorporated in the record the record made at the representation hearing. This decision[4] required the city to recognize and bargain collectively with Local No. 328 of the Teamsters union as the exclusive representative of the patrolmen and sergeants of the police force of the city.

On May 1, 1967, the city of Escanaba filed delayed application with this Court and the Supreme Court for leave to appeal from the findings of fact, conclusions of law and directive of election in the rep-

---

[4] "It is hereby ordered that the public employer, city of Escanaba, its city council, city manager, officers, agents, successors and assigns, shall:

"1. Cease and desist from:

"Refusing to recognize and bargain with Teamsters Union Local 328, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, as the exclusive representative, for purposes of collective bargaining, of a unit of all patrolmen and sergeants in the police department, excluding the chief of police, captain, and all other employees.

"2. Take the following affirmative action:

"(a) Upon request, bargain with the above-named union as the exclusive representative, for purposes of collective bargaining, of the above-described unit of employees."

resentation case issued by the MLMB November 3, 1966. On June 21, 1967, the Supreme Court denied the application as not timely filed and for insufficient showing of lack of culpable negligence in regard to the application for delayed appeal. On July 12, 1967, this Court denied leave to appeal for lack of jurisdiction of the cause.

At the time in question, the interpretation of the law as to whether this Court had jurisdiction in an appeal from the representative proceedings was not clear. Thereafter the Supreme Court ruled in the case of *Michigan State University Board of Trustees* v. *State Labor Mediation Board* (1968), 381 Mich 44 that the Court of Appeals does have jurisdiction to review representation proceedings. The city of Escanaba filed with this Court a complaint for review pursuant to the provisions of § 16(e) of the PERA, and a petition for the enforcement of the bargaining order by the MLMB was likewise filed pursuant to the provisions of § 16(d) of the PERA. The complaint of the city and the matter of the enforcement order have been consolidated for consideration on this appeal.

It appears that the city of Escanaba failed to appeal from the representation decision timely because the PERA was new and it was not clear as to the proper method to be followed *i.e.,* whether it had to wait for a hearing on the merits of the complaint of the labor union charging an unfair labor practice or appeal directly from the representation hearing determination to this Court or the Supreme Court. The status of the law was considered by the MLMB to be uncertain because it ordered the incorporation of the minutes of the representation proceedings in the record of the hearing on the complaint of the Teamsters Local No. 328 charging an unfair labor practice by the city. For these reasons

and because this Court denied leave to appeal to the city of Escanaba from the representation hearing stating it did not have jurisdiction, we will review in this case both orders of the MLMB.

Teamsters Local No. 328 and MLMB assert that § 9 of the PERA[5] is applicable to this case.

"It shall be lawful for public employees to organize together or to form, join or assist in labor organizations, to engage in lawful concerted activities for the purpose of collective negotiation or bargaining or other mutual aid and protection, or to negotiate or bargain collectively with their public employers through representatives of their own free choice."

It is the claim of the city of Escanaba that (1) under the public policy of the State of Michigan and the city of Escanaba, police officers are limited in selecting a labor union as their representative for collective bargaining purposes to a labor organization composed of law enforcement officers and (2) police officers and sergeants of the police department of the city of Escanaba are officers and not employees within the meaning of the public policy of the State.

For definition of the meaning of the term "public policy" we turn to 50 CJ, Public Policy, § 62, pp 857–859:

"The term 'public policy,' being of such vague and uncertain meaning, and of such variable quantity, has frequently been said not to be susceptible of exact or precise definition; and some courts have said that no exact or precise definition has ever been given or can be found. Nevertheless, with respect to the administration of the law, the courts have frequently quoted and often approved of the statement that public policy is that principle of the law which holds that 'no one' can lawfully do that which has a tend-

---

[5] MCLA § 423.209 (Stat Ann 1968 Rev § 17.455[9]).

ency to be injurious to the public or against the public good; that rule of law which declares that no one can lawfully do that which tends to injure the public, or is detrimental to the public good; the principles under which freedom of contract or private dealing is restricted by law for the good of the community. 'Public policy' has been said to be synonymous with 'policy of the law,' and also has been defined as 'the public good.' In a less technical sense, especially with respect to legislative actions, 'public policy' may be and often is nothing more than expediency, political expediency, or the policy upon which governmental affairs are conducted for the time being; public sentiment. In a judicial sense, public policy does not mean simply sound policy, or good policy, but it means the policy of a state established for the public weal *either by law, by courts, or by general consent.*

"Sources. The term has been said to mean the law of the state as found *declared in its constitution, its statutory enactments, and its judicial records,* some courts going so far as to say that the public policy of a state must be determined by its *constitutions, laws, and judicial decisions,* and that they will not resort to other sources of information; but this rule has been criticized, and a broader rule announced. Public policy is a question of law and not of fact." (Emphasis supplied.)

Const 1963, art 4, § 48 states:

"The legislature may enact laws providing for the resolution of disputes concerning public employees, except those in the state classified civil service."

Section 9 of the PERA, *supra,* added by PA 1965, No 379, states the current public policy of this State, as established by the legislature, regarding public employees joining unions. It is that they may form, join or assist in labor organizations, and bargain collectively through representatives of their own

free choice. Section 9 supersedes any prior public policy of this State established by statutes, the courts, or general consent regarding public employees joining unions.

Therefore, if city policemen are public employees they may join labor organizations which include in their membership persons who are neither policemen nor public employees.

The term "public employee" is defined in § 2 of the PERA[6]:

"No person holding a position by appointment or employment in the government of the state of Michigan, or in the government of any 1 or more of the political subdivisions thereof, or in the public school service, or in any public or special district, or in the service of any authority, commission, or board, or in any other branch of the public service, hereinafter called a 'public employee,' shall strike."

This definition contains no exception for law enforcement officers, and it is our opinion that the term when used in PERA includes policemen.

Plaintiff argues that an important fact in construing § 9 is that the legislature in the same year that it added § 9 also amended § 5a of the Home Rule Cities Act to read:

"No city shall have power to deny employment to any person for the reason that he is a member of any society which is incorporated under the laws of this state, the membership of which is composed solely of law enforcement officers, unless same is contrary to his oath of office."[7]

Plaintiff asserts that this reaffirmed the right of a city to prohibit police officers from becoming members in an organization not composed solely of law

---

[6] MCLA § 423.202 (Stat Ann 1968 Rev § 17.455[2]).
[7] MCLA § 117.5a (Stat Ann 1969 Cum Supp § 5.2084[1]).

enforcement officers. Plaintiff has misconstrued § 5a. The fact that the statute prohibits a city from firing a policeman who joins a society composed solely of law enforcement officers does not mean, conversely, that the city can prohibit a policeman from joining a union composed of both public and private employees.

We find no error in the decision of the MLMB and an order will issue enforcing the MLMB's order dated October 25, 1967.

No costs, a public question being involved.

LEVIN, P. J., concurred.

HOLBROOK, J. (*dissenting*). Being unable to join with my brother judges in their determination of this case, I must respectfully dissent for the reasons herein stated. I am convinced that it is imperative, if we are to experience a fair and impartial administration of government in this free society, that the fundamental law recognize and declare that the officers of the legislative, judicial and executive divisions of government that have the duty of making, interpreting, and enforcing the laws, may not strike and also may not join with others in any union organization that could give special favor to the members of that organization or interfering with such officers' undivided loyalty to their oaths of office and to their duties. In this statement of declared truth, I would include police officers of a city, who are required by their oaths to enforce the laws in their city. I believe the public policy of our state is that just stated.

The facts as stated in the majority opinion are as I would have stated them, as is the definition of the term "public policy" taken from 50 CJ, Public Policy, § 62, pp 857–859. I also reiterate what I believe

to be the claims of the city of Escanaba on this appeal—(1) under the public policy of the State of Michigan and the city of Escanaba, police officers are limited in selecting a labor union as their representative for collective bargaining purposes to a labor organization composed of law enforcement officers and (2) police officers and sergeants of the police department of the city of Escanaba are officers within the meaning of the public policy of the state.

In the case of *Fraternal Order of Police* v. *Lansing Board of Police & Fire Com'rs* (1943), 306 Mich 68, 71, 77–80, the board of police and fire commissioners of the city of Lansing passed a resolution:

" 'The men and discipline committee to whom was referred the matter of investigation of the Fraternal Order of Police wish to make the following report, after interviewing the president of the organization:

" 'That no superior officer of the Lansing police department be allowed to become a member of the Fraternal Order of Police; that the membership be confined to members of the Lansing police department with the exceptions of the superior officers; and that inasmuch as the Fraternal Order of Police is an organization of policemen, that they refrain from taking into the order, so-called associate or honorary members.

" 'The committee makes these recommendations having in mind the welfare of both the organization and the police department, and with the convictions that this is departmental business.' "

The Fraternal Order of Police, a Michigan nonprofit organization, brought the suit for the purpose of enjoining and restraining the members of the Board of Police and Fire Commissioners of the city of Lansing from enforcing the above resolution. In

the majority opinion written by Mr. Justice BUSH-
NELL it is stated as follows:

"In *Coane* v. *Geary* (1939), 298 Ill App 199 (18 NE
2d 719), the court quoted with approval a statement
from the opinion rendered in *O'Regan* v. *City of Chi-
cago*, reported in 37 Chicago Legal News, p 150, De-
cember 24, 1904. That statement is applicable to the
instant case. It reads in part as follows:

" ' "A police force is peculiar, *sui generis*, you may
say, in its formation and in its relation to the city
government. It is practically an organized force
resembling in many respects a military force, or-
ganized under the laws of the United States and
equally as important as to the functions it is required
to perform.

" ' "It is not an ordinary branch of the executive
government like the mayor's office even, your water
department, the comptroller's department, the health
department, even; but, as I say, it is peculiar to it-
self, and to look at it in the same light that other
branches of the executive department are regarded
would be a mistake in a judicial decision. It is a
department which requires that the members of it
shall surrender their individual opinion and power
to act, and submit to that of a controlling head just
as much as the common soldier must surrender his
own opinion and power of action to that of his com-
manding officer. And there is the same necessity
of discipline—of regulation existing in the police
department that exists in regard to the military de-
partment. Strict discipline must be enforced, and
it must be enforced in a manner that is effective, and
without the supervision or regulation of any other
department of the State, and, particularly, without
any attempt on the part of the judicial department
(which is a branch of the government entirely dis-
tinct and separate from the executive department),
to regulate it in any way, and particularly, to reg-
ulate its discipline." ' *  *  *

"When the Fraternal Order of Police confined its activities to 'police officers engaged in regular police duties,' its members were not acting as private individuals. Defendant board is not necessarily concerned with the private activities of police officers, but it is and should be greatly concerned with their activities as members of the law enforcement branch of the government. Those who serve the public, either as the makers of the law, the interpreters of the law, or those who enforce the law, must necessarily surrender, while acting in such capacity, some of their presumed private rights. As stated by Mr. Justice Sharpe:

" 'Nor can it be denied that when a person is appointed and becomes a member of the police department, he subjects himself to the reasonable rules and regulations adopted by the board.' *  *  *

"The constitution and bylaws of plaintiff's national, state and local organizations which were received in evidence provide in effect that citizens may become associate members upon payment of dues of not less than $5 per year, and such associate members will be furnished 'a membership card' and car 'emblem.' One would be naive, indeed, to assume that such automobile emblem did not carry with it the intimation of special privileges to associate members. This of itself is enough to require the determination that the existence of plaintiff organization within the law-enforcement body of a municipality *is contrary to public policy.*

"Defendant board is necessarily vested with a large measure of discretion and the burden of showing arbitrary action is upon those who charge it. *Carter* v. *Thompson* [(1935), 164 Va 312 (180 SE 410)].

"We agree with the trial judge that the resolution adopted by the board was reasonable and that:

" 'It cannot be said that such action is not within the scope of the authority granted by the charter of the city of Lansing, nor that it is arbitrary or un-

reasonable.  Neither the plaintiffs nor the individuals concerned are deprived of any constitutional right.'" (Emphasis supplied.)

Judicial notice may be taken of the fact that the Teamsters Local No. 328 admits other members than police officers or other law enforcement officers.  The privileges and responsibilities of such membership are not in evidence although proffered by the city of Escanaba before the MLMB.  The question of conflict of interests was not considered by the MLMB for the reason that it determined that § 9 of the PERA was conclusive and that the terms thereof included as employees the police force of the city.

In the case of *Blynn* v. *City of Pontiac* (1915), 185 Mich 35, the question was whether a policeman of the city of Pontiac was an employee or an officer. The determination therein that the police officer under the facts in that case was an officer and not an employee was based on the provisions of the charter (and ordinances) of the city.  This conclusion is proper, for Mr. Justice Kuhn stated on p 46 as follows:

"Being satisfied that a policeman is an appointive officer under the provisions of the charter of this city, required to take an official oath of office, which it appears was done in this case, it follows that he came within the exception in subdivision 1, § 7, pt 1, act No 10, Public Acts 1912 (extra session), (2 How Stat [2d ed] § 3945), and is not an employee, as defined by said act, and therefore does not come within its provisions.  Any effort to enlarge the scope of this act should be addressed to the legislature."

In 16 McQuillin, Municipal Corporations, § 45.11, pp 661–665, it is stated:

"It has been said that policemen may be either officers or employees, as the local legislative depart-

ment may determine. A majority of the cases announce that members of a police department, including commissioners, superintendents, the chief of police, police sergeants, watchmen, constables, special policemen, and patrolmen, are public officers. Thus, policemen have been held to be officers, and not employees, with respect to qualifications, compensation, tenure, dismissal, and within the meaning of a workmen's compensation act. They are sometimes held to be state officers, it being said that they hold office not under contract between themselves and the municipality, but as a trust from the state. Other courts, however, hold them to be municipal officers, and, in fact, their chief function is to aid in enforcing the local police regulations, mainly of municipal origin, and they are paid for such service not by the state, but out of the city treasury, from the contributions of the local taxpayers, for strictly 'municipal purposes.' Under some laws, they are held to be both state and municipal officers."

Also, in 43 CJ, Policemen, § 1315, pp 761, 762, we find further light wherein it is stated:

"The office of policeman or police patrolman was unknown to the common law, and wherever it exists it is a creation of statute or municipal ordinance. In its generic sense it includes every member of the police force, whatever may be his grade or rank. A policeman has been variously defined to be an 'officer,' or a 'peace officer,' or a 'civil officer.' Under some provisions creating the office a policeman is considered a public officer holding his office as a trust from the state and not as a matter of contract between himself and the city, although for some purposes he may be regarded also as a city officer. But, in construing particular provisions creating the office, it has been variously held that a policeman is a city officer in a proper sense and not a state officer; that he is not a 'public officer' that he is neither a state officer nor an officer acting in a purely local

capacity, but is an officer *sui generis;* that he is. only a ministerial officer. *Police officers can in no sense be regarded as agents or employees of the city."* (Emphasis supplied.)

A determination must be made in this case in the first instance as to whether under the charter and ordinances of the city of Escanaba police officers of that city are officers or employees. This was not done by the MLMB.

The public policy of the state has been clearly de-fined in the cases of *Fraternal Order of Police* v. *Lansing Board of Police & Fire Com'rs, supra; State Lodge of Michigan, Fraternal Order of Police* v. *City of Detroit* (1947), 318 Mich 182. A recent case that fortifies these principles and sanctions the right of the city to forbid its police officers from joining a union that admits employees of private industry and other personnel is *Local No. 201 (AFL–CIO)* v. *City of Muskegon* (1963), 369 Mich 384.

The public policy of our state as declared by the Supreme Court permits a home rule city to control the members of its police force so that police officers may not become members of a union that admits to membership others than law enforcement officers which may result in privileges being extended to such other members, or whereby police officers may be prevented from carrying out their duties impartially and fairly. Inasmuch as members of a police force may be officers of a city and not employees under *Blynn* v. *Pontiac, supra,* and because the legislature in enacting MCLA § 423.209 (Stat Ann 1968 Rev § 17.455[9]) did not specifically name police officers as public employees, it is apparent that the public policy of our state as declared by the Supreme Court has not been changed by the PERA. Police officers may be likened to a city attorney and his assistants— they are both appointed and they both take oaths of

office. Both are responsible for the proper enforcement of the law. It is reasonable to assume that the city attorney and his assistants are officers and not employees of the city within the terms of the PERA. The declared public policy of the state is available to the city of Escanaba in this case.

I conclude that there were issues before the MLMB that were not determined; that proper evidence was proffered bearing upon those issues that were not admitted, and I would therefore remand to the MLMB for a further hearing or hearings to determine the status of the police officers of the city of Escanaba, i.e., whether the police officers are employees or officers under the charter, ordinances and resolutions of the city; whether the adoption of the resolution by the city council of Escanaba was a proper exercise of its power; and to determine possible conflicts of interest resulting from the proposed joining by the police officers of the city of Escanaba of Teamsters Local No 328, which admits others than law enforcement officers to its membership. This should be determined under the laws of this state and the charter, ordinances and resolution of the city of Escanaba. All proper exhibits and evidence pertaining to these issues should be admitted by the MLMB on remand. Redetermination should be made in both matters by the MLMB and certified back to this Court for further review.

No costs, a public question being involved.