CRESTWOOD EDUCATION ASSOCIATION v EMPLOYMENT
RELATIONS COMMISSION

Docket Nos. 77-3336, 77-3337. Submitted March 22, 1978, at Detroit.—
Decided February 5, 1979.

Replacement teachers were hired in 1975 by the Crestwood Board
of Education to replace teachers, members of the Crestwood
Education Association (CEA), terminated by the board after a
labor dispute. The CEA then brought an action in the Wayne
Circuit Court alleging that the school board had not bargained
in good faith and had committed certain unfair labor practices.
The circuit court set the terminations aside. The Court of
Appeals affirmed, 57 Mich App 636 (1975). The board appealed
to the Supreme Court which reversed the Court of Appeals and
upheld the terminations holding that individual termination
hearings were not required prior to a teacher's termination,
393 Mich 616 (1975). Subsequently, the CEA pursued charges
previously filed against the board with the Michigan Employ-
ment Relations Commission (MERC) alleging that the board
had unilaterally changed the terms and conditions of employ-
ment. MERC accepted the administrative law judge's opinion
recommending dismissal and also dismissed other charges of
unfair labor practices brought by the CEA. The CEA appealed.
Affirmed, 71 Mich App 347 (1976). Thereafter a group called
the Crestwood Teachers Organization (CTO) petitioned MERC
for recognition as the sole bargaining agent for teachers in the
Crestwood School District. The CEA intervened alleging certain
unfair labor practices by the board and contending that the
CTO was made up of only temporary teachers. The administra-
tive law judge held that the board had violated the public
employee relations act by conditioning reemployment on the
renunciation of union representation at the hearings ordered

REFERENCES FOR POINTS IN HEADNOTES

[1] 48 Am Jur 2d, Labor and Labor Relations §§ 1171, 1186-1190.
[2] 48 Am Jur 2d, Labor and Labor Relations § 1192.
[3] 48 Am Jur 2d, Labor and Labor Relations §§ 613, 1162, 1194-1197.
  Labor law: Right of public employees to strike or engage in work
  stoppage. 37 ALR3d 1147.
[4, 5] 1 Am Jur 2d, Administrative Law § 70.

by the Supreme Court and a cease and desist order was therefore entered. The CTO's representation petition was accepted and an election ordered, which subsequently led to the CTO being chosen as the teachers' bargaining representative. In an opinion dated thereafter MERC accepted the recommendations of the administrative law judge. The CEA appeals raising issues regarding the sufficiency of the unfair labor practice remedy, the validity of the CTO election and the role of MERC in adjudicating the dispute. *Held:*

1. The cease and desist order was a sufficient remedy to effectuate the policies of the public employees relations act in light of the fact that the violations were not widespread, none of the three teachers involved received an absolute guarantee that they would be rehired or told that they would not be rehired if they appeared at the hearings ordered by the Supreme Court with a CEA attorney, and because the order was not a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the act.

2. The employment relations commission properly ordered the election that resulted in the CTO being chosen as the teachers' bargaining representative and properly limited the right to vote in such election to the replacement teachers.

3. The discharged teachers were not entitled to vote in the election since they had been previously discharged but may, if reinstated, petition for a decertification election regarding CTO's representation of the teachers.

4. The employment relations commission properly limited its role in this matter to that of adjudicating the dispute before it; the commission did not have a statutory duty to investigate and prosecute the unfair labor practice charges.

Affirmed.

1. Appeal and Error — Court of Appeals — Scope of Review — Employment Relations Commission — Statutes.

The Court of Appeals' scope of review of Michigan Employment Relations Commission remedial determinations empowers the Court, after the filing of petitions, to summarily grant to the commission or to any prevailing party such temporary relief or restraining order as it deems just and proper, enforcing, modifying, enforcing as so modified, or setting aside in whole or in part the order of the commission; the remedial orders of the commission are not to be disturbed unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the public employee relations act (MCL 423.216; MSA 17.455[16]).

2. Labor Relations — Public Employees — Labor Organizations — Public Employers — Statutes.

It is lawful for public employees to organize together or to form, join or assist in labor organizations; it is unlawful for a public employer or an official or agent of a public employer to discriminate in regard to hire, terms or other conditions of employment in order to encourage or discourage membership in a labor organization. (MCL 423.209, 423.210; MSA 17.455[9], 17.455[10]).

3. Schools and School Districts — Teachers — Strikes — Public Employee Relations Act — Hearings — Labor Relations — Statutes.

A teacher who strikes in violation of the public employee relations act may be disciplined without a prior hearing; a predisciplinary hearing is not necessary before the discharge of a public employee for striking (MCL 423.201 *et seq.;* MSA 17.455[1] *et seq.).*

4. Labor Relations — Public Employees — Public Employee Relations Act — Employment Relations Commission — Statutes.

The public employee relations act contains no provision authorizing the Michigan Employment Relations Commission to investigate and prosecute complaints; the act merely authorizes the commission to issue complaints (MCL 423.216; MSA 17.455[16]).

5. Administrative Law — Agencies — Authority.

Administrative agencies possess only that authority delegated to them by the Legislature.

*Levin, Levin, Garvett & Dill* (by *Harvey I. Wax),* for Crestwood Education Association.

*Smith, Poplar & Kalis,* for Crestwood Teachers Organization.

*Targan & Homeier,* for Crestwood Board of Education.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Francis W. Edwards,* Assistant Attorney General, for Michigan Employment Relations Commission.

Before: D. C. RILEY, P.J., and T. M. BURNS and CYNAR, JJ.

CYNAR, J. A short history of this dispute is necessary, due to the nature of the issues presented herein.

The Crestwood Education Association (CEA) has, for some time, acted as the certified bargaining agent for teachers employed by the Crestwood Board of Education (Board). Labor difficulties began in the district in the fall of 1971 when coaches of the student athletic teams and sponsors of student clubs refused to perform their assignments. This dispute eventually was brought before the Michigan Employment Relations Commission (MERC). In an opinion[1] dated April 2, 1973, the administrative law judge ruled that the teachers' failure to perform the above-noted duties constituted an illegal strike. Thus, it was held that the Board's failure to rehire the football coaches did not violate any of the sections of the public employee relations act (PERA).[2] However, the Board's action of unilaterally instituting wage increases for the coaches hired was found to violate §§ 10(1)(a) and 10(1)(e) of the act. Accordingly, a cease and desist order was entered and the Board was ordered to bargain in good faith with the CEA. That opinion was adopted in full by MERC on May 4, 1973.

The labor problems in the school district subsided until the fall of 1974. On the first day of class for the 1974-1975 school year, September 3, 1974, the members of the CEA failed to report for work. The teachers had been without a collective bargaining agreement since August of 1973. An

[1] MERC Op C72 I-161, May 4, 1973.

[2] MCL 423.201 et seq.; MSA 17.455(1) et seq.

injunction was obtained by the Board, which was subsequently violated by the teachers in December 1974. The teachers were then told to report to work or resign. Pursuant to this ultimatum, 38 teachers reported for work and one resigned. On December 30, 1974, the remaining 184 teachers in the school district were terminated and replacements hired to take their place.

On January 10, 1975, this termination was set aside by the Wayne County Circuit Court. The Court of Appeals affirmed.[3] On April 4, 1975, the Supreme Court reversed the Court of Appeals[4] and upheld the termination, holding that, under the circumstances, individual termination hearings were not required *prior* to termination. The Court held that the teachers were presently entitled to individual hearings under § 6 of the PERA to determine if they took part in the strike. The Court also added that teachers *could* be entitled to reinstatement if MERC found that the Board committed unfair labor practices.

Subsequently, the CEA pursued charges against the Board which had been previously filed on March 8, 1974. These alleged that, after the expiration of the prior labor contract in August of 1973, the Board had unilaterally changed the terms and conditions of employment under which the teachers were expected to work. The administrative law judge's opinion, recommending dismissal of these charges, was accepted by MERC on July 31, 1975. On that same date MERC also dismissed other charges of unfair labor practices brought by the CEA against the Board. In an opinion dated September 27, 1976, this Court af-

---

[3] *Rockwell v Crestwood School District Board of Education*, 57 Mich App 636; 226 NW2d 596 (1975).

[4] *Rockwell v Crestwood School District Board of Education*, 393 Mich 616; 227 NW2d 736 (1975).

firmed the MERC decision.[5] Leave to appeal was denied by the Michigan Supreme Court.[6]

The present action arises as a result of the Board's conduct in conjunction with the § 6 hearings ordered by the Supreme Court and the efforts by the replacement teachers to organize into a new bargaining unit. In the fall of 1975 those teachers hired to replace the teachers fired by the Board began organizing into a group called the Crestwood Teachers Organization (CTO). On November 27, 1975, the CTO petitioned MERC for recognition as the sole bargaining agent for teachers in the Crestwood School District. The CEA intervened in that proceeding, alleging certain unfair labor practices by the Board and contending that the CTO was made up of only "temporary teachers".

A hearing was held on these matters on December 22 and 29, 1975, and January 16, 1976. At the hearing three former Crestwood teachers testified as to improprieties committed by the Board. James Brown testified that he had been contacted by the superintendent who had told him he would consider rehiring him if he waived his § 6 hearing or went there without a union-provided attorney. Gerald Miller testified that he contacted the superintendent concerning his old job. Miller asked him what would happen if he were not represented by the union and was told that his § 6 hearing would be expedited. He also testified that his attorney told him it was likely he'd get his job back if he refused union representation at the hearing. This information allegedly came from the Board's attorney. Charles Kotulski testified that he approached

---

[5] *Crestwood Education Association v MERC,* 71 Mich App 347; 248 NW2d 266 (1976).

[6] *Crestwood Education Association v MERC,* 399 Mich 853 (1977).

a member of the school Board and was told he could get his job back if he went to the § 6 hearing without an attorney.

In an opinion dated June 3, 1976, the administrative law judge held that the Board had violated § 10(1)(c) of PERA by conditioning reemployment on the renunciation of union representation at the § 6 hearings. A cease and desist order was thus entered. In addition, the CTO's representation petition was accepted and an election ordered, which subsequently led to the CTO being elected as the teachers' bargaining representative. In an opinion dated December 29, 1976, MERC accepted the recommendations of the administrative law judge. The CEA now appeals as a matter of right, raising three issues for consideration.

*I. The sufficiency of the unfair labor practice remedy.*

Appellant initially contends that the cease and desist order was an insufficient remedy in light of the nature of the unfair labor practices committed by the Board. It argues that the three teachers involved should have been reinstated with back pay. In limiting its remedy to a cease and desist order, MERC concluded that the violations were "individual, not widely disseminated and isolated in scope".

In confronting the adequacy of the remedy imposed, it is first necessary to determine this Court's scope of review of MERC's remedial determination. This Court's power of review is established by MCL 423.216(e); MSA 17.455(16)(e) which empowers this Court, after the filing of petitions, to

"* * * summarily grant to the commission or to any prevailing party such temporary relief or restraining

order as it deems just and proper, enforcing, modifying, enforcing as so modified, or setting aside in whole or in part the order of the commission."

As the statute is silent as to the weight to be given MERC's view of the proper remedy in a given instance, we must look elsewhere for guidance. MCL 423.216(b); MSA 17.455(16)(b) requires MERC to issue a cease and desist order and to "take such affirmative action * * * as will effectuate the policies of this act". This language is nearly verbatim that used in the National Labor Relations Act, 29 USC 160(c). Under the Federal act, the remedial orders of the National Labor Relations Board are not to be disturbed,

"unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act." *Virginia Electric & Power Co v NLRB,* 319 US 533, 540; 63 S Ct 1214; 87 L Ed 1568 (1943), *NLRB v Retail Store Employees Union, Local 876,* 570 F2d 586, 593 (CA 6, 1978).

This standard was adopted and applied to the PERA in *Van Buren Public School District v Wayne Circuit Judge,* 61 Mich App 6, 33; 232 NW2d 278 (1975). In the absence of any clear legislative statement to the contrary we adopt this standard in reviewing the present case. Although other standards[7] have been adopted in different

---

[7] Contrast the standard of review used in the following instances:

1) MERC's administrative decision of lack of interest for decertification election not to be disturbed unless "so perverse or palpably wrong as to effectively amount to a breach of its statutory duty." *Hepler v Dep't of Labor,* 64 Mich App 78, 87; 235 NW2d 161 (1975).

2) MERC's determination that a group of employees did not constitute a proper bargaining unit is not to be disturbed unless unsupported by substantial evidence or in violation of the constitution or statute. *Local 547, International Union of Operating Engineers, AFL-CIO v Henry Ford Hospital,* 59 Mich App 625, 628; 229 NW2d 925 (1975).

contexts, when reviewing remedies the above standard of review seems appropriate in light of the mandate of MCL 423.216(b); MSA 17.455(16)(b) to fashion remedies so as to "effectuate the policies of this act".

MERC found that the Board violated § 10(1)(c) of the act. That section states in pertinent part:

"It shall be unlawful for a public employer or an official or agent of a public employer * * * (c) *to discriminate in regard to hire,* terms or other conditions of employment *in order to* encourage or *discourage membership in a labor organization* * * *." (Emphasis added.)

It is true that anti-union activity here goes to the very heart of one of the policies of the act, the right of public employees to organize in labor organizations. MCL 423.209; MSA 17.455(9) expressly recognizes this right, stating:

"It shall be lawful for public employees to organize together or to form, join or assist in labor organizations * * *."

This section not only provides public employees with the right to organize, but also states the public policy of this state regarding the unionization of public employees, *City of Escanaba v Labor Mediation Board,* 19 Mich App 273, 281; 172 NW2d 836 (1969).

It is also true that the Board's timing in this matter was abominable. We are dealing here with a longstanding dispute which has engendered considerable litigation, including an appeal to the

Note also *NLRB v Food Store Employees Union, Local 347,* 417 US 1; 94 S Ct 2074; 40 L Ed 2d 612 (1974), which held that the reviewing court was powerless to modify the NLRB's order denying the union's request for attorneys' fees and costs.

Michigan Supreme Court. These unfair labor practices took place at a time when the dispute between these parties was in the process of being resolved. The Board's efforts should have been directed toward reconciliation, not further divisiveness and a continuation of litigation between the parties.

However, we note that the violations here were not widespread. Furthermore, we note, as did MERC below, that none of the three teachers involved received an absolute guarantee that they would be rehired. Nor were they ever told they would not be rehired if they appeared at the § 6 hearing represented by a CEA attorney.

In light of these above considerations and the stringent standard of review, we decline to disturb the remedy imposed by MERC in this case. Although we might believe a more stringent remedy is warranted, it is not our role to replace the remedy fashioned by MERC with one consistent with our own views. Under these circumstances the cease and desist order was sufficient to effectuate the policies of the act.

*II. The validity of the election.*

Appellant further claims that MERC erred in certifying a representation election held by those teachers who replaced the discharged teachers. Appellant's argument, however, is premised upon the assumption that the discharged teachers will all be reinstated. After hearings and an initial appeal, only 12 of 141 teachers who requested § 6 hearings have been reinstated. On appeal to this Court none of the remaining discharged teachers were ordered reinstated. *Arnold v Crestwood Board of Education,* 87 Mich App 625; 277 NW2d 158 (1978).

We believe that MERC properly ordered the

election and properly limited the right to vote in such an election to the replacement teachers. Since the replacement teachers had a right to organize and since MERC found that they had fulfilled all the necessary requirements, the election was properly ordered. Under the circumstances, the right of the replacement teachers to organize outweighs the rights of the discharged teachers.

Nor were the discharged teachers entitled to vote in such an election. As *Rockwell v Crestwood School District Board of Education,* 393 Mich 616; 227 NW2d 736 (1975), makes abundantly clear, these teachers had been previously discharged. No prior hearing was required before such discharge. Therefore, the right to vote in the election was properly limited to their replacements.

Of course, there still remains the possibility that the discharged teachers may yet be reinstated by a higher court. If that were to occur, it would be extremely unfair to require them to be bound by the result of a representation election in which they did not participate. If that were the necessary result, we might be inclined to rule otherwise. However, MCL 423.212; MSA 17.455(12) permits the employees to petition for a decertification election. Such an election may take place at any time after one year from the date of a valid election. MCL 423.214; MSA 17.455(14). Since the one-year period has no doubt already passed, the discharged teachers, upon reinstatement, would be able to petition once more for representation by the CEA. Therefore, the discharged teachers are in no way prejudiced by the election of the CTO as the replacement teachers' representative and the result of the election should stand.

*III. The role of MERC.*

Appellant lastly contends that MERC erred in rejecting an alleged statutory duty to investigate and prosecute the unfair labor practice charge. We find no merit to this contention. The PERA contains no provision analogous to 29 USC 153 of the National Labor Relations Act authorizing MERC to investigate and prosecute complaints. MCL 423.216; MSA 17.455(16) merely authorizes MERC to issue complaints. Although the PERA was modeled after the Federal act, we are unable to conclude that the omission of investigatory and prosecutorial powers was accidental. Nor is it our role to conclude that it is "necessary" for MERC to be so empowered. Administrative agencies possess only that authority delegated to them by the Legislature. *Civil Service Comm of the City of Hamtramck v Pitlock,* 44 Mich App 410, 412; 205 NW2d 293 (1973). Therefore, we hold that MERC properly limited its role in this matter to that of adjudicating the dispute before it.

*Conclusion*

The decision of the commission is affirmed. No cost, interpretation of a statute being involved.