CLERICAL-TECHNICAL UNION OF MICHIGAN STATE
UNIVERSITY v MICHIGAN STATE UNIVERSITY BOARD OF
TRUSTEES

CLERICAL-TECHNICAL UNION OF MIHCIGAN STATE
UNIVERSITY v MICHIGAN STATE UNIVERSITY

Docket Nos. 165131, 165835. Submitted May 9, 1995, at Lansing.
Decided October 20, 1995, at 9:00 A.M. Leave to appeal sought.

The Clerical-Technical Union of Michigan State University, in
separate cases before the Michigan Employment Relations
Commission, filed a unit clarification petition and an unfair
labor practice charge after Michigan State University unilater-
ally removed certain job positions from the bargaining unit
represented by the Clerical-Technical Union. The Clerical-Tech-
nical Union additionally alleged failure by MSU to bargain and
that the transfer of one position to the unit represented by the
Michigan State University Administrative-Professional Associa-
tion constituted unlawful assistance to that union. In the unit
clarification case, the commission decided that MSU had unlaw-
fully removed positions from the Clerical-Technical Union's
bargaining unit, issued a cease-and-desist order against MSU,
and ordered MSU to issue to employees a notice explaining the
unfair labor practice. In the unfair labor practice case, the
commission decided that MSU had engaged in an unfair labor
practice and the commission ordered MSU to cease refusing to
bargain. The Clerical-Technical Union appealed in each case,
and the Court of Appeals consolidated the appeals.

The Court of Appeals *held:*

1. Section 16(b) of the public employment relations act, MCL
423.216(b); MSA 17.455(16)(b), provides that the Michigan Em-
ployment Relations Commission, upon finding an unfair labor
practice, shall state its findings of fact, issue an order requiring
the offender to cease and desist from the unfair labor practice,
and take such affirmative action as will effectuate the policies
of the act. The Court of Appeals will not disturb a remedy
ordered by the commission pursuant to § 16(b) unless the

REFERENCES

Am Jur 2d, Labor and Labor Relations §§ 2642, 2821.
See ALR Index under Labor and Employment.

remedy is a patent attempt to achieve ends other than those that can fairly be said to effectuate the policies of the act. Here, the commission's order in the unit clarification case, insofar as it failed to direct further remedial action by MSU, was a patent attempt to achieve ends other than those that can fairly be said to effectuate the policies of the act, among which is to promote the peaceful settlement of industrial disputes by subjecting labor-management controversies to the mediatory influence of negotiation.

2. The commission's order in the unfair labor practice case was also a patent attempt to achieve ends other than those that can fairly be said to effectuate the policies of the act, insofar as the order allowed MSU to raise reliance on prior decisions by the commission as a defense to the unfair labor practice charge and failed to place on MSU the costs of its wrongdoing.

3. With respect to the claim that MSU had engaged in an unfair labor practice by providing illegal assistance to the Michigan State University Administrative-Professional Association, the commission failed to make findings and issue an appropriate order. The commission must do so on remand.

4. The commission failed to decide the appropriate unit for representation by the Clerical-Technical Union. On remand, the commission must specifically state findings with respect to the appropriate unit.

Reversed and remanded.

HOEKSTRA, P.J., dissenting, stated that the commission's orders constituted a lawful exercise of the commission's discretionary authority pursuant to MCL 423.216(b); MSA 17.455(16) (b), that the commission is under no requirement to return the parties to the status quo ante or to effectuate the remedy requested by a prevailing party, and that the commission implicitly addressed the issues of illegal assistance to the Michigan State University Administrative-Professional Association and appropriate bargaining unit.

LABOR RELATIONS — PUBLIC EMPLOYMENT RELATIONS ACT — UNFAIR LABOR PRACTICES — MICHIGAN EMPLOYMENT RELATIONS COMMISSION — APPEAL.

The Michigan Employment Relations Commission, upon finding an unfair labor practice in a public employment setting, must state its findings of fact, issue an order requiring the offender to cease and desist from the unfair labor practice, and take such affirmative action as will effectuate the policies of the public employment relations act; the Court of Appeals will not disturb a remedy ordered by the commission for such unfair

labor practice unless the remedy is a patent attempt to achieve ends other than those that can fairly be said to effectuate the policies of the act (MCL 423.216[b]; MSA 17.455[16][b]).

*Finkel, Whitefield & Selik, P.C.* (by *Bradley T. Raymond*), for Clerical-Technical Union of Michigan State University.

*Sally S. Harwood,* for Michigan State University Board of Trustees.

*White, Beckman, Przybylowicz, Schneider & Baird, P.C.* (by *James J. Chiodini*), for Michigan State University Administrative-Professional Association, MEA/NEA.

Before: HOEKSTRA, P.J., and WAHLS and G. S. BUTH,* JJ.

WAHLS, J. The Clerical-Technical Union of Michigan State University appeals as of right from two decisions and orders of the Michigan Employment Relations Commission (MERC), which found that Michigan State University had committed an unfair labor practice but did not order restoration of the status quo ante. The MERC issued cease-and-desist orders but not orders for further remedial action. We have consolidated the two appeals for the purpose of this opinion. We reverse and remand.

Appellant represents a bargaining unit of clerical and technical employees of Michigan State University. The Michigan State University Administrative-Professional Association (APA), intervenor in Docket No. 165131, represents a bargaining unit of nonsupervisory administrative and professional employees. Supervisory employees are represented

---

* Circuit judge, sitting on the Court of Appeals by assignment.

by a third bargaining unit that is not party to the proceedings involved here.

On September 22, 1983, appellant and MSU agreed to hire an outside consultant to conduct a jointly funded classification study. On January 30, 1986, the consulting firm's proposal for the study was accepted by both appellant and MSU. In August, 1987, the consulting firm issued its initial draft of the study, which reviewed four thousand employees of MSU.

On January 28, 1988, MSU wrote to appellant and stated that it was "accepting for potential implementation the new classification descriptions, individual placements, grade levels, and FLSA/bargaining unit determinations" of the consulting firm. In February 1988, appellant filed the unit clarification petition at issue in Docket No. 165131, asserting that the bargaining unit status of certain positions was in dispute. In November 1988, MSU sent notices to employees of changes in job title, grade level, and bargaining unit.

On December 27, 1988, appellant initiated the proceedings involved in Docket No. 165131, alleging that MSU had engaged in an unfair labor practice by unilaterally moving positions to a different bargaining unit on the basis of the study's recommendations. Later, appellant filed an amended charge against MSU, additionally alleging that the transfer constituted unlawful assistance to the APA. Hearing referee Bert H. Wicking recommended in Docket No. 165131 that the MERC dismiss the unfair labor practice charges and unit clarification petition.

On August 31, 1993, the MERC held that MSU had unlawfully removed positions from appellant's unit without appellant's agreement. The MERC issued a cease-and-desist order and ordered MSU to post a notice to employees that explained the unfair

labor practice. The MERC dismissed appellant's unit clarification petition. The appeal in Docket No. 165131 followed.

Meanwhile, the position at issue in Docket No. 165835, Financial Aid Officer I (FAO I), was initially in the APA bargaining unit. However, pursuant to the classification study, the position was placed in appellant's unit in October 1988. In June 1989, the Financial Aid Department requested a reclassification of the FAO I position. The position was transferred back to the APA in August 1989.

On October 26, 1989, appellant filed an unfair labor practice charge against MSU in Docket No. 165835, alleging a failure to bargain. Later, appellant filed an amended charge in which it additionally alleged that MSU had unlawfully assisted the APA. On April 26, 1991, hearing referee James P. Kurtz issued his decision recommending that the MERC dismiss appellant's charge. On August 31, 1993, the MERC held that MSU's unilateral transfer of positions to a different unit was an unfair labor practice and ordered MSU to cease refusing to bargain. However, the MERC did not order further remedial action. The appeal in Docket No. 165835 followed.

I

Appellant argues that the MERC arbitrarily refused to grant remedies that would have restored the status quo ante. This Court will not disturb MERC remedies unless the MERC order is a "patent attempt to achieve ends other than those which can fairly be said to effectuate the policies" of the public employment relations act (PERA), MCL 423.201 et seq.; MSA 17.455(1) et seq. *Crestwood Ed Ass'n v Employment Relations Comm*, 88 Mich App 409, 416; 276 NW2d 592 (1979). The MERC's

power to order a remedy is "a broad discretionary one, subject to limited judicial review." *Van Buren Public School Dist v Wayne Circuit Judge,* 61 Mich App 6, 32-33; 232 NW2d 278 (1975).

The remedy for an unfair labor practice is statutorily provided as follows:

> If upon the preponderance of the testimony taken the commission is of the opinion that any person named in the complaint has engaged in or is engaging in the unfair labor practice, then it shall state its findings of fact and shall issue and cause to be served on the person an order requiring him to cease and desist from the unfair labor practice, and to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this act. [MCL 423.216(b); MSA 17.455(16)(b).]

Under the terms of the statute, upon finding an unfair labor practice, the MERC must order the offender to cease and desist from the unfair labor practice. The statute does not explicitly state that the remedy must restore the status quo ante, but instead requires that the MERC take other action "as will effectuate the policies of [the PERA]."

Generally, the PERA authorizes the MERC to issue a cease-and-desist order without requiring further action. *Crestwood Ed Ass'n, supra,* p 418. In *Crestwood,* this Court indicated that, although it believed that a more stringent remedy was warranted, it was not this Court's role "to replace the remedy fashioned by MERC with one consistent with our own views." *Id.*

Appellant argues that the opposite result is required by *Rockwell v Crestwood School Dist Bd of Ed,* 393 Mich 616, 642; 227 NW2d 736 (1975), where the Court held that the MERC may not adopt an arbitrary policy of refusing to consider exercis-

ing its authority in matters falling within its jurisdiction. However, in that case, the MERC responded to the union's request to seek immediate relief with a response that it was "the consistent policy of this Commission to refrain from petitioning for temporary relief or a restraining order." *Id.* In this case, there is no comparable policy. As amply cited in appellant's briefs on appeal, the MERC has used its authority in the past to order other remedies.

The same result is true under federal law. In construing the PERA, both the MERC and Michigan courts have frequently been guided by the construction placed on the analogous provisions of the National Labor Relations Act (NLRA), 29 USC 141 *et seq. Rockwell, supra,* p 636; *Detroit Fire Fighters Ass'n v Detroit,* 96 Mich App 543, 545; 294 NW2d 842 (1980). The provision of the PERA at issue here, MCL 423.216(b); MSA 17.455(16)(b), is taken almost verbatim from the NLRA, 29 USC 160(c).

Appellant argues that both the Sixth Circuit Court of Appeals and the District of Columbia Circuit Court of Appeals have rejected analogous claims that the National Labor Relations Board (NLRB) possesses discretion to refuse to remedy unfair labor practices after finding that they have been committed. However, the cases cited by appellant stand for the proposition that the NLRB must issue a cease-and-desist order, not that it must order other action as well. *UAW v NLRB,* 427 F2d 1330, 1334 (CA 6, 1970); *Int'l Woodworkers v NLRB,* 127 US App DC 81; 380 F2d 628 (1967); see also *Eichleay Corp v NLRB,* 206 F2d 799, 805 (CA 3, 1953). The MERC has complied with that requirement here. Indeed, the United States Supreme Court has affirmed the enforcement of an NLRB decision to issue a cease-and-desist order, but

not to order reimbursement. *Shepard v NLRB,* 459 US 344, 349; 103 S Ct 665; 74 L Ed 2d 523 (1983). The Court reasoned that the statute does not require the NLRB "to reflexively order that which a complaining party may regard as 'complete relief' for every unfair labor practice." *Id.,* p 352.

The holding that the MERC is authorized generally to remedy an unfair labor practice by issuing only a cease-and-desist order does not end the matter. We must still determine whether the MERC orders here were "patent attempt[s] to achieve ends other than those which can fairly be said to effectuate the policies" of the PERA. *Crestwood Ed Ass'n, supra,* p 416. The circumstances of this case are distinguishable from those in *Crestwood,* where the reinstatements that the charging party sought would not have restored the status quo immediately before the unfair labor practice.

One purpose of the PERA is "to promote the peaceful settlement of industrial disputes by subjecting labor-management controversies to the mediatory influence of negotiation." *Van Buren Public School Dist, supra,* pp 25-26. In addition, provisions of the PERA are to be construed liberally in favor of public employees as compensation for the act's prohibition against striking. *MESPA v Jackson Community College,* 187 Mich App 708, 711; 468 NW2d 61 (1991); see *Detroit Fire Fighters Ass'n v Detroit,* 408 Mich 663, 684; 293 NW2d 278 (1980).

In Docket No. 165835, the MERC gave little guidance with respect to the reasoning behind its decision. It stated simply that "[i]t is not recommended that further remedial action be taken by the University for it well may have been led astray by prior decisions of this Commission." The MERC denied appellant's motion for clarification or reconsideration of the remedy.

Effective appellate review, as well as judicial and administrative accountability, requires that the MERC clearly articulate the reasons behind any order, and particularly why other remedies were found to be inappropriate. *NLRB v Pacific Southwest Airlines,* 550 F2d 1148, 1152 (CA 9, 1977). Here, the MERC erred in its sparse legal reasoning. A party's claim that it acted in detrimental reliance on prior administrative decisions is not a defense to unfair labor practice allegations or the issuance of traditional remedies. See *Clear Pine Mouldings v NLRB,* 268 NLRB 1044; 115 LRRM 1113 (1984), enf'd 765 F2d 148 (CA 9, 1985). Either the company or the employees must bear the costs of the remedy. See *NLRB v JH Rutter-Rex Mfg Co,* 396 US 258, 263-264; 90 S Ct 417; 24 L Ed 2d 405 (1969). The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty that his own wrong has created. *Bigelow v RKO Radio Pictures, Inc,* 327 US 251, 265; 66 S Ct 574; 90 L Ed 652 (1946).

Construing the PERA liberally on behalf of MSU employees, *MESPA, supra,* p 711, we find that MSU should not have been granted the benefit of its wrongdoing. Accordingly, we hold that the MERC's order Docket No. 165835 was a "patent attempt to achieve ends other than those which can fairly be said to effectuate the policies" of the PERA. *Crestwood Ed Ass'n, supra,* p 416. In addition, upon finding an unfair labor practice, the MERC should have required MSU to post a notice so that MSU employees would have full and accurate information of the decisions of the MERC. See *Mooresville Cotton Mills v NLRB,* 97 F2d 959, 963-964 (CA 4, 1938).

In Docket No. 165131, the MERC's decision provided more guidance about its reasoning. First, it

stated that it is reasonable to assume that MSU.
relied on the 1978 case to its detriment. Second,
the MERC found that "the bargaining unit changes
cannot be separated from the other changes, e.g.
classification, title and grade changes, which re-
sulted from the study and which have now been in
effect for more than four years." The MERC con-
cluded that to return the positions removed from
appellant now would cause "hopeless confusion."

However, as noted above, MSU's reliance on prior
administrative decisions is not a defense to tradi-
tional remedies for unfair labor practices. See
*Clear Pine Mouldings, supra,* p 1044, n 3. More-
over, the MERC was concerned about the confusion
that would result from reversing MSU's actions
four years later. However, either the company or
the employees had to bear the costs of the admin-
istrative delay. *JH Rutter-Rex, supra,* pp 263-264.
Because MSU was the wrongdoer, it should have
been the party bearing the costs that its own
wrong created. *Bigelow, supra,* p 265. Accordingly,
we hold that the MERC's order in Docket No.
165131 was also a "patent attempt to achieve ends
other than those which can fairly be said to effec-
tuate the policies" of the PERA. *Crestwood Ed
Ass'n, supra,* p 416. We remand both cases back to
the MERC to determine a remedy that will effectu-
ate the policies of the PERA.

## II

Appellant argues that the MERC did not issue
findings with regard to whether defendant pro-
vided illegal assistance to the APA. We agree. The
MERC is required to issue findings and an appropri-
ate order regarding unfair labor practice allega-
tions brought before it. MCL 423.216(b); MSA
17.455(16)(b). Similarly, under the NLRA, when a

complaint has been brought, the NLRB has two choices: it must determine either that a violation occurred or that it did not. *UAW, supra,* pp 1331-1332. There is no express authorization in the statutory language for the NLRB to abstain from deciding whether the alleged conduct violates the NLRA. *Id.,* p 1332.

Here, both of the MERC's opinions focused entirely on appellant's complaints concerning MSU's refusal to bargain. Indeed, in Docket No. 165835, the MERC specifically stated: "Nor is it material as to how the position of Financial Assistance Officer I came to be in the Charging Party's bargaining unit." Nowhere does the PERA authorize the MERC to abstain from deciding whether the alleged conduct violates the PERA. See *UAW, supra,* p 1332. Upon remand, the MERC must determine in both cases whether MSU committed an unfair labor practice by providing illegal assistance to the APA.

III

Appellant argues in Docket No. 165131 that the MERC arbitrarily refused to decide the appropriate unit for collective bargaining. We agree. The PERA requires the MERC to state its findings. MCL 423.216(b); MSA 17.455(16)(b). Upon remand, the MERC should specifically state its findings with respect to the appropriate bargaining unit.

Reversed and remanded.

G. S. BUTH, J., concurred.

HOEKSTRA, P.J. *(dissenting).* I respectfully dissent because I would conclude that the Michigan Employment Relations Commission (MERC) orders in these consolidated cases constitute a lawful exercise of the MERC's discretionary authority pursuant

to MCL 423.216(b); MSA 17.455(16)(b). This Court's review of the MERC's remedial orders is very limited. This Court has consistently refused to substitute its judgment for that of the MERC. *Crestwood Ed Ass'n v Employment Relations Comm,* 88 Mich App 409; 276 NW2d 592 (1979); *Muskegon Co Professional Command Ass'n v Muskegon Co,* 186 Mich App 365, 374; 464 NW2d 908 (1990); *Wayne-Westland Ed Ass'n v Wayne-Westland Community Schools,* 176 Mich App 361, 364; 439 NW2d 372 (1989). The Public Employment Relations Act (PERA), MCL 423.201 *et seq.;* MSA 17.455(1) *et seq.,* requires the MERC, upon finding an unfair labor practice, to issue a cease-and-desist order. MCL 423.216(b); MSA 17.455(16)(b). With respect to any additional orders, unless it can be shown that the orders are a patent attempt to achieve ends other than those that can fairly be said to effectuate the policies of the PERA, the remedial orders of the MERC are not to be disturbed. *Crestwood, supra.* The MERC is not required to return the parties to the status quo ante or to effectuate the remedy requested by a prevailing party. *Id.*

In both cases the majority correctly finds that the MERC issued a cease-and-desist order, which is the only mandatory requirement of the statute. However, the majority goes on to find that the MERC's refusal to order a return to the status quo ante was a patent attempt to achieve ends contrary to the policies of the PERA. I find no such evidence in the record and would therefore affirm.

The MERC found, and the record supports, that although MSU had committed an unfair labor practice in each case, it had done so on the basis of its reasonable reliance on a previous decision of the MERC, which had upheld MSU's right to make unilateral changes of positions on the basis of the contractual agreement and past practices of the

parties. The opinion, *Michigan State Univ v Michigan State Univ Employees Ass'n,* 1978 MERC Lab Op 871, was specifically addressed and overruled for the first time in Docket No. 165835. That same MERC opinion was referenced and discussed in Docket No. 165131. It is apparent that MSU's reliance on this prior opinion of the MERC, which authorized the very same practice that the MERC now found to be an unfair labor practice persuaded the MERC that a return to the status quo ante was not warranted. To say, as the majority does, that the motivation for the MERC orders is a patent effort to achieve ends other than those consistent with the policies of the PERA under these circumstances is simply not supported by the record.

Further, I would find that the MERC orders implicitly resolved the allegations of illegal assistance and failure to address unit clarification. Both issues underlie appellant's basic charge of failure to provide a proper remedy, and resolution of the remedy issue fairly advised appellant of the MERC's opinion regarding these secondary issues. Remand for specific consideration of these issues is unnecessary.